2000 ME 214

**Michael NIEHOFF**

v.

**SHANKMAN & ASSOCIATES LEGAL CENTER, P.A.**

Supreme Judicial Court of Maine.

Argued Nov. 8, 2000.

Decided Dec. 21, 2000.

Francis M. Jackson (orally), Jackson & MacNichol, Portland, for plaintiff.

Wendell G. Large (orally), Anne H. Cressey, Richardson Whitman Large & Badger, P.C., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Michael Niehoff appeals from a judgment of the Superior Court (Cumberland County, *Delahanty, J.*) denying his motion for partial summary judgment and granting Shankman & Associates Legal Center's motion for summary judgment as to all claims. Niehoff contends that the court erred in: (1) ruling that Niehoff would not have been entitled to severance benefits if L.L. Bean, Inc.'s severance pay policy was considered to be a welfare plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1985 & Supp.1993); (2) ruling in the alternative that the L.L. Bean policy did not constitute an ERISA-covered plan; and (3) failing to hold Shankman liable to Niehoff for legal malpractice. Because we determine that Niehoff failed to show he would have recovered had Shankman pled a claim under ERISA, we affirm the judgment.

## I. FACTS

[¶ 2] Niehoff was employed by L.L. Bean beginning in November 1985. In October 1988, Niehoff stopped working and went on leave for a nonwork-related disability. He received short-term disability benefits from L.L. Bean during this period. Niehoff then returned to work. Due to the same disability, he once again went on leave in 1991 and received short-term disability benefits. After six months, and in accordance with L.L. Bean's then existing employment practices, Niehoff's position was terminated and he began receiving long-term disability benefits. By February 1992, Niehoff had not worked for a year. Pursuant to company policy, Niehoff's employment was terminated at that time.

[¶ 3] When L.L. Bean refused to grant him severance benefits, Niehoff retained Shankman & Associates Legal Center to represent him. Shankman filed an action against L.L. Bean in Superior Court, asserting claims of breach of contract, misrepresentation and unjust enrichment (*Niehoff I* ). The Superior Court (Sagadahoc County, *Saufley, J.*) granted summary judgment to L.L. Bean on all counts. In its order, the Superior Court *sua sponte* raised the issue of ERISA preemption, stating that even if Niehoff had presented material facts in dispute, ERISA preempted the state law claims because the L.L. Bean policy on severance benefits was a plan under ERISA.

[¶ 4] We affirmed the Superior Court's decision on the common law claims by a memorandum of decision in which we stated that there was no need to discuss the ERISA issue. *Niehoff v. L.L. Bean, Inc.*, No. 7122 (*Niehoff I* ) (Me. Feb. 1, 1995) (mem.). Niehoff then filed another lawsuit in Superior Court pleading claims under ERISA (*Niehoff II* ). In that suit, he was represented by an attorney unaffiliated with Shankman. The Superior Court (Cumberland County, *Saufley, J.*) granted L.L. Bean's motion for summary judgment, finding that res judicata barred Niehoff's claims. Niehoff did not appeal from that judgment.

[¶ 5] Niehoff then brought the present action for legal malpractice against Shank-

man, alleging legal malpractice and breach of contract (*Niehoff III* ). The Superior Court (*Delahanty, J.*) denied Niehoff's motion for summary judgment on the issue of liability and for partial summary judgment on the issue of damages applicable to severance pay. The court granted Shankman's cross-motion for summary judgment on all claims. This appeal followed.

## II. STANDARD OF REVIEW

[¶ 6] The entry of summary judgment must be reviewed independently "for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered." *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.,* 1998 ME 210, ¶ 11; 718 A.2d 186, 190 (citation omitted). A summary judgment will be upheld "if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* Where the defendant properly challenges all elements of plaintiff's claim, the "plaintiff must establish a prima facie case for each element of his cause of action." *Id. See also Dumont v. Fleet Bank of Maine,* 2000 ME 197, ¶ 10, 760 A.2d 1049, 1053.

[¶ 7] In legal malpractice cases, the plaintiff must show (1) a breach by the defendant attorney of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff. *See Corey v. Norman, Hanson & DeTroy,* 1999 ME 196, ¶ 10, 742 A.2d 933, 938–39 (citing *Steeves,* 1998 ME 210, ¶ 12, 718 A.2d at 190).

[¶ 8] The same rules of causation generally apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty. *Steeves,* 1998 ME 210, ¶ 10 n. 8, 718 A.2d at 190 (citations omitted). Proximate cause exists in professional malpractice cases where "evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Merriam v. Wanger,* 2000 ME 159, ¶ 8, 757 A.2d 778, 780–81. "The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to judgment." *Id.* at ¶ 8, 757 A.2d at 781. *See also Steeves,* 1998 ME 210, ¶¶ 12–13, 718 A.2d at 190. Accordingly, the same analysis as to causation applies to Niehoff's claims for breach of contract and legal malpractice. To succeed on appeal, Niehoff must identify facts which indicate that Shankman's negligence in not bringing the ERISA claim proximately caused his loss. *See Corey,* 1999 ME 196, ¶ 14, 742 A.2d at 940.

[¶ 9] We have indicated that to prevail in a legal malpractice action, a plaintiff must demonstrate that he or she would have achieved a more favorable result but for the defendant's alleged legal malpractice. *See id.,* ¶¶ 13–14, 742 A.2d at 940; *Steeves,* 1998 ME 210, ¶¶ 12–13, 718 A.2d at 190. However, such statements have been made in the context of actions asserting legal malpractice in advice or tactics which preceded a final result on the merits of an underlying action. This is a different case. Here, the alleged negligence is in failing to plead or timely plead so that plaintiff's opportunity to get before the factfinder is lost. Requiring a plaintiff to demonstrate that a more favorable result would have been achieved is more problematic in this context. Few results from a factfinder in a civil case can be predicted as "more likely than not." *Cf. Corey,* 1999 ME 196, ¶ 14, 742 A.2d at 940. A factfinder can disbelieve a key witness or award plaintiff nothing for reasons that may not be explained.

[¶ 10] On appeal from a grant of summary judgment, a plaintiff-appellant in a "failure to plead" legal malpractice action

must demonstrate that there are facts in dispute which are sufficient to allow a jury to conclude that: (1) the defendant attorney was negligent in representation of the plaintiff; and (2) the attorney's negligence caused the plaintiff to lose an opportunity to achieve a result, favorable to the plaintiff, which (i) the law allows; and (ii) the facts generated by plaintiff's M.R. Civ. P. 7(d)[1] statements would support, if the facts were believed by the jury. Where a plaintiff generates fact disputes on these issues, summary judgment must be denied and plaintiff is entitled to proceed to trial.

## III. ERISA APPLICABILITY

[¶ 11] According to Niehoff, his state law claims were preempted by ERISA pursuant to 29 U.S.C. § 1144 (1985 & Supp. 1993).[2] *See, e.g., Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co.*, 215 F.3d 136, 139 (1st Cir.2000). The governing statute, 29 U.S.C. § 1002(1) (Supp.1993) defines a welfare plan as "any plan, program or fund" established or maintained by an employer that provides certain benefits to employees.[3] These benefits include, for example, benefits in the event of disability, death, unemployment, vacation benefits, health benefits, day care centers

and prepaid legal services. 1 LEE T. POLK, ERISA PRAC. & LIT. § 2.04 (2000 ed.).

[¶ 12] L.L. Bean's severance benefits plan may fit the statutory requirements of an ERISA welfare plan, as interpreted by the Supreme Court in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (in which a Maine statute providing for a one-time, lump-sum payment triggered by a single event, a plant closing, was found not to be a preempted ERISA plan). In *Fort Halifax*, the Court stated:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control.

*Id.* at 12, 107 S.Ct. 2211. The Court also held that the purpose of preemption is to ensure that the administrative practices of a benefit plan are governed by only a single set of regulations, and this concern arises only when there is an "ongoing administrative program." *Id.* at 11, 107

---

1. Effective January 1, 2001, the Maine Rules of Civil Procedure are amended to move the statement of material fact requirements for summary judgment motions from M.R. Civ. P. 7(d) to M.R. Civ. P. 56(h).

2. The relevant portion of section 1144 is as follows:
   § 1144. Other laws
   (a) Supersedure; effective date
   Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
   . . . .
   29 U.S.C. § 1144 (1985 & Supp.1993).

3. The relevant portion of section 1002 is as follows:
   § 1002. Definitions

For purposes of this subchapter:
(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
29 U.S.C. § 1002 (Supp.1993).

S.Ct. 2211. *See also Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 455 (1st Cir. 1995).

[¶ 13] *Fort Halifax* established that the timing and the number of payments are factors in analyzing whether an employer's obligation amounts to an ongoing administrative plan.[4] Section 1.11D of the L.L. Bean Policy and Procedures Manual, entitled "Severance Benefits" and dated 8/1/87, addresses the conditions under which an employee is eligible for severance pay.[5]

[¶ 14] Under the L.L. Bean plan, not all dismissed or laid-off employees will be eligible to receive severance pay. Eligibility depends on the type of position held and the reason for termination, and exclusions apply for discharge for disciplinary reasons or discharge for gross misconduct. The payments are made once, lump-sum, at the time the last paycheck is issued. However, the severance payment plan is administered with some elements of discretion and on an ongoing basis as employees terminate and their eligibility for severance pay must be evaluated. Thus, it appears that the L.L. Bean severance payment plan surpasses the "theoretical possibility of a one-time obligation in the future" that the *Fort Halifax* Court held "simply creates no need for an ongoing administrative program for processing claims and paying benefits." *Fort Halifax*, 482 U.S. at 12, 107 S.Ct. 2211. *See also Simas v. Quaker Fabric Corp. of Fall River*, 6 F.3d 849, 854 (1st Cir.1993) (where a one-time severance payment authorizing severance pay for employees required the employer to make a case-by-case determination of each employee's eligibility based on several discreet factors and was held to impose ongoing administrative obligations beyond *Fort Halifax*); *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 566 (2d Cir.1998) (existence or nonexistence of administrative discretion in maintaining plan is relevant to ERISA applicability).

## IV. SEVERANCE PLAN INTERPRETATION

[¶ 15] If we assume that the L.L. Bean plan was a welfare plan for the purposes of ERISA, cases decided pursuant to ERISA indicate that Niehoff would not have been eligible for benefits under L.L. Bean's severance pay policy. "Contract language in an ERISA action is to be given its plain meaning." *Rodriguez–*

---

**4.** *See, e.g., James v. Fleet/Norstar Fin. Group, Inc.*, 992 F.2d 463, 468 (2d Cir.1993) (employer's undertaking to give employees 60 days additional pay following their last day of work if employees would remain on the job until internal consolidation was complete did not require an ongoing administrative program); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir.1992) (employer's obligation was one-time, lump-sum, and occurred at different times, requiring the administrator of the plan to determine whether the employee had been offered "substantially equivalent employment" upon acquisition of employer, but was nondiscretionary because the application of the plan was not "unthinking" and therefore comprised a plan under ERISA); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1539 (3d Cir.1992) (no ERISA plan found where employees were permitted to retire pursuant to "buyout plan" and receive lump-sum payment plus "continued benefits").

**5.** Section 1.11D provides as follows:

**General Policy**

Under specific circumstances severance benefits will be paid to regular employees whose employment with L.L. Bean is terminated. The purpose of severance pay is to ease the financial burden of the terminated employee while in transition from the company to other employment alternatives.

**Specific Terms of the Policy**

*Eligibility for Severance Pay* A non-exempt employee with at least 6 months of employment in a regular position or any regular exempt employee is eligible for severance pay under the following circumstances:

*Dismissal* This results when an employee is unable to meet the requirements of his job, but has made every reasonable effort to do so. In other words, the cause for the dismissal is considered beyond the employee's control. For example:

. . . .

● Continued poor attendance or tardiness due to documented disability, illness or family illness/problems.

L.L. Bean Policy and Procedures Manual, § 1.11D.

*Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 586 (1st Cir.1993) (citation omitted).

[¶ 16] The L.L. Bean manual provides for severance pay for employees who are dismissed because of "continued poor attendance or tardiness due to documented disability, illness or family illness/problems." Niehoff claims he falls within this provision. However, when he was terminated, Niehoff had no position at L.L. Bean and thus no job he could poorly attend. The term "poor attendance" can be reasonably interpreted to imply that benefits are not awarded to an employee who has lost his position and is on long-term disability leave. Rather, the employee must be presently in a position of employment at L.L. Bean, although the employee is repeatedly absent or late while attempting to continue working. Niehoff was not presently working at his position because he was on medical leave, and entirely absent from work.

[¶ 17] Even if the manual terms are considered to be ambiguous, Niehoff's legal malpractice claim fails under ERISA case law and the applicable summary judgment standard. If contract language is ambiguous or uncertain, its interpretation is a question of fact to be determined by a factfinder. *See Kandlis v. Huotari,* 678 A.2d 41, 43 (Me.1996); *Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 516 (Me.1996). However, while "an argument between parties about the meaning of a contract is typically an argument about a 'material fact,' summary judgment is not necessarily foreclosed." *Allen v. Adage, Inc.,* 967 F.2d 695, 698 (1st Cir. 1992) (citations omitted) (an ERISA action affirming a grant of summary judgment for an employer that denied severance pay to its employees).

[¶ 18] In ERISA cases, the usual rule that ambiguities in contracts are construed against the drafter does not apply. "Even if there is ambiguity in the language ... the evidence presented about the parties' intended meaning may be so one-sided that no reasonable person could decide the contrary" (citations omitted). Furthermore, "[w]hen interpreting severance pay plans in the ERISA context, ambiguous terms are generally not construed against the employer." *Rodriguez–Abreu,* 986 F.2d at 586 (citing *Allen,* 967 F.2d at 701). In *Allen,* the court decided that where the defendant offered "uncontroverted proof of past practice" under the plan, the "extrinsic evidence, though not robust, is one-sided and points unerringly in the same direction." *Allen,* 967 F.2d at 702. The court noted that past practice is "still frequently used by courts as a device for deciphering the meaning of ambiguous plan provisions." *Id.*

[¶ 19] Shankman addressed the issue of L.L. Bean's past practices by its Rule 7(d) statement that "[s]ince the early 1980's it has consistently been the practice at L.L. Bean not to award severance pay to employees on long term disability." Shankman cites the affidavit of L.L. Bean's Director of Total Quality Human Resources, who stated:

> Since at least 1983, L.L. Bean, Inc.'s policy has been that persons who cannot return to work within one year due to disability do not receive severance benefits after their employee status has ended .... Since Mr. Niehoff was unable to return to work within six months [of receiving long term benefits], his position was filled. L.L. Bean did agree to allow Mr. Niehoff to return to another position if he did so prior to February 19, 1992. Mr. Niehoff did not return to work prior to February 19, 1992, and, consistent with company policy, his status as an employee of L.L. Bean, Inc. ceased.

The director cited provisions from L.L. Bean's manual, dated 3/1/92 (after Niehoff's termination), in support of her statements that this was L.L. Bean's continuing practice.

[¶ 20] Rule 7(d) statements, supported by appropriate record references, are

"deemed to be admitted unless properly controverted by the statement required to be served by the opposing party." M.R. Civ. P. 7(d)(2). For Niehoff to prevail under the applicable summary judgment standard, which requires that we not construe the plan terms against L.L. Bean, Niehoff had to produce evidence of past practices placing Shankman's evidence in dispute. Niehoff did not do so. The uncontroverted evidence points to a past practice by L.L. Bean of not granting severance pay to individuals such as Niehoff, who lose their positions after six months of disability leave, and are subsequently terminated due to their inability to return to work a year after the leave commenced. This uncontroverted evidence governs interpretation of the severance plan pursuant to ERISA. *See Allen*, 967 F.2d at 702.

[¶ 21] In conclusion, Niehoff has not shown that he could have recovered had Shankman brought his claims under ERISA, even when we presume L.L. Bean's policy to be an ERISA welfare plan. Because we presume that the L.L. Bean severance pay plan is an ERISA covered plan, we need not address Niehoff's claim that ERISA preemption is established by collateral estoppel. We also do not reopen examination of the state law claims resolved in the prior actions.

[¶ 22] Because disputes of material fact are not generated to support the claim that Shankman's actions constituted legal malpractice, Niehoff's claims fail.

The entry is:

Judgment affirmed.