STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         Civil Action No. 01-322

GREG SHINBERG,                  )
        Plaintiff               )
                                )              **ORDER ON DEFENDANT'S MOTION**
v.                              )              **FOR SUMMARY JUDGMENT**
                                )
                                )
NATHAN SZANTON, et al.          )
        Defendant               )

DONALD L. GARBRECHT
LAW LIBRARY

FEB 14 2002

This matter is before the court on the defendant's motion for summary judgment on counts I and II of the plaintiff's complaint. For the following reasons, the motion is denied on both counts.

Viewed in the light most favorable to the plaintiff, the nonmoving party, see Paschal v. City of Bangor, 2000 ME 50, ¶ 9, 747 A.2d 1194, 1197, the record demonstrates the following.

In September 1999, the plaintiff, Greg Shinberg ("Shinberg"), contacted the defendant, Nathan Szanton ("Szanton"), regarding employment opportunities with The Szanton Company ("TSC"), a Maine corporation operated by Szanton. After negotiating an employment agreement, TSC hired Shinberg as a project manager. On September 28, 1999, the parties executed an agreement setting forth the terms of Shinberg's employment ("the September Agreement"), which states, in relevant part:

> The purpose of this letter is to formalize the terms that we've discussed and, I think, agreed upon verbally. We can refer to it throughout this coming year in case either of our memories become foggy as to what we've agreed on.
>
> **Pay:** Base salary of $39,000 per year, plus profit-sharing and referral bonuses, as if applicable.
>
> **Profit-sharing Bonus:** 20% of the profit TSC earns on your efforts, up to total annual billings collected of $90,000. 50% of the profit TSC earns on any billings over $90,000 *per calendar year*. ***
>
> **Review of Compensation:** *All forms of your compensation will be reviewed at each anniversary of your employment.* Increases will be based on your work quality, your ability to accept feedback on your work and use it to improve, your success at bringing in business, and TSC's performance.

(emphasis added).

In January 2000, the parties agreed to modify Shinberg's employment agreement ("the January Agreement") in the following manner:

> This letter modifies my offer letter to you of September 19, 1999, along the lines of the changes we have been discussing in your compensation package. I am prepared now to enhance your compensation package outlined in that letter in the following ways. These changes will take effect immediately:
>
> * * *
>
> 3. Change the profit-sharing formula so that after we have collected $97,440 from billings by you in *a year* (46.4 weeks times 28 hours/week = 1,299.2 x $75/hr. = ($97,440), you will receive 80% of the profit on such earnings. (You will still receive 50% of the profit on fees collected over $90,000. This will go to 80% if the overall number hits $97,440.)
>
> I am also prepared to increase your base salary from $39,000 to $44,000, retroactively to 1/1/2000 . . . .
>
> * * *
>
> In exchange for these enhancements to your package, you have agreed a) to accept more administrative responsibilities than we contemplated when you joined TSC, because there is now one less worker here to shoulder such responsibilities; and b) that *my offer to you of 9/19/99, as modified by this letter, shall constitute your compensation package until we do a year-end review at the end of the year 2000 for the year 2001.*

(emphasis added).

In the beginning of October 2000, Szanton told Shinberg that his employment would be terminated effective December 31, 2000, and, on December 31, 2000, Szanton terminated Shinberg. In January 2001, Shinberg sent Szanton a letter in which he demanded that Szanton pay him $7,737, and alleged that this amount constituted the profit-sharing bonus that he earned as of September 27, 2000. Shinberg's letter also demanded that Szanton pay him two paychecks from December 2000. Szanton did not submit to Shinberg's demands, and on June 15,

2

2001, Shinberg brought this action against Szanton. In the complaint, Shinberg alleges breach of contract (Count I) and violation of the Wage and Hour Law, 26 M.R.S.A. § 626 (Count II).[1]

On August 3, 2001, Szanton moved for summary judgment on Counts I and II, arguing they should be dismissed because they both rest on Shinberg's misinterpretation of the plain language used in the September and January Agreements and his mistaken belief that Shinberg has earned, but not been paid, certain profit-sharing compensation. Shinberg opposes the motion.

The outcome of this motion hinges on the court's determination of how the parties intended the profit-sharing provision of the contract to be measured: by a January to December time period or a September 27, 1999 to September 26, 2000 time period. Because the court finds the contractual language is ambiguous, the defendant's motion is denied.

## DISCUSSION

A party is entitled to summary judgment when there are no genuine issues of material fact, and that party "is entitled to a judgment as a matter of law." M.R. Civ. P. 56 (c); In re Estate of Davis, 2001 ME 106, ¶ 7, 775 A.2d 1127, 1129. "A fact is material when it has the potential to affect the outcome of the suit." Kenny v. Dep't of Human Services, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (citations omitted). "An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial." Id. (citations omitted). "To survive a defendant's motion for summary judgment, a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for summary judgment as a matter of law." Id. (citation omitted).

"While the interpretation of unambiguous contracts is a matter of law," Hawkes v. Commercial Union Ins. Co., 2001 ME 8, ¶ 20, 764 A.2d 258, 266-267, "[i]f contract language is ambiguous or uncertain, its interpretation is a question of fact to

---

1. Shinberg is also asking the court for a judgment declaring that the agreement not to compete in the contract is not supported by consideration and is overly broad and unreasonable (Count III). Count III is not relevant to this motion.

be determined by a factfinder." <u>Niehoff v. Shankman & Associates Legal Center, P.A.</u>, 2000 ME 214, ¶ 17, 763 A.2d 121, 127. Contractual "[l]anguage is considered to be ambiguous if it is reasonably susceptible to different interpretations." <u>Acadia Ins. Co. v. Buck Const. Co.</u>, 2000 ME 154, ¶ 9, 756 A.2d 515, 517. "In determining whether the contract is ambiguous, it is evaluated as a whole and must be construed in accordance with the intention of the parties." <u>Foundation for Blood Research v. St. Paul Marine and Fire Ins. Co.</u>, 1999 ME 87, ¶ 11, 730 A.2d 175, 180. "The court is to ascertain the intention of the parties by looking at the agreement itself, taking into consideration the subject matter, motive and purposes of the parties, as well as the object to be accomplished." <u>Waltman & Co. v. Leavitt</u>, 1999 ME 4, ¶ 12, 722 A.2d 862, 864.

Generally, the "canons of construction require that a contract be construed to give force and effect to all of its provisions," and the court must "avoid an interpretation that renders meaningless any particular provision in the contract." <u>Acadia Ins. Co. v. Buck Const. Co.</u>, 2000 ME 154, ¶ 9, 756 A.2d 515, 517. "The court, however, does not have the authority to rewrite the contract." <u>Pine Ridge Realty v. Massachusetts Bay Ins. Co.</u>, 2000 ME 100, ¶ 23, 752 A.2d 595, 601.

This court finds that the September Agreement and January Agreement, read together, are ambiguous. Although there is authority interpreting the term "calendar year" in favor of both sides, <u>see</u> <u>In re Rosenstein's Estate</u>, 124 N.Y.S.2d 783, 783 (1953) ("calendar year" means January 1 to December 31), <u>and</u> <u>Newman v. Borough of Fair Lawn, Bergen County</u>, 157 A.2d 314, 316 (N.J. 1960) ("calendar year" is sometimes defined to mean a 365-day, or 12-month period, regardless of when it begins or ends), the main question is which interpretation the parties had in mind when they entered the contract.

The September Agreement states that the parties are to refer to it "throughout the coming year," and that "[a]ll forms of [Shinberg's] compensation will be reviewed at each anniversary of [his] employment." This language puts Shinberg's profit-sharing bonus, *i.e.*, that he would receive "50% of the profit TSC earns on any

4

billings over $90,000 per calendar year," into perspective. The language indicates an intent to make a September 27, 1999 to September 26, 2000 "year" by which Shinberg's profit-sharing bonus would be measured.

On the other hand, the January Agreement modified the September Agreement, "along the lines of the changes [the parties had] been discussing in [Shinberg's] compensation package." Starting on January 24, 2002[2] the "profit-sharing formula" was changed such that in addition to Shinberg's 50% bonus for earnings exceeding $90,000, Shinberg would receive 80% of the profit on earnings exceeding $97,440 in a year (which Szanton defined as "46.4 weeks"). This language demonstrates that the parties may have intended to modify only Shinberg's percentage of earnings, not the time frame by which the earnings were to be measured. The following language, however, indicates that the parties may have intended the year of measurement to change from September 27, 1999 - September 26, 2000 to January 1, 2000 - December 31, 2000. The agreement states that Szanton's "offer to [Shinberg] of 9/19/99, as modified by this letter, shall constitute [his] compensation package until [they] do a year-end review at the end of the year 2000 for the year 2001."

Based on the summary judgment record, the court cannot say which time period the parties intended to use as the measuring year. The ambiguity in the contractual language must be determined by a factfinder, as the court is not able to say, as a matter of law, that the contract can be interpreted in favor of one party or the other. The defendant's motion for summary judgment is, therefore, denied on both counts.

THE DOCKET ENTRY IS:

The defendant's motion for summary judgment is denied.

_____

2. The January Agreement states that "[t]hese changes will take effect immediately . . . ." The Agreement is dated January 23, 2000, but executed on January 24, 2000. Shinberg's salary increase, however, was retroactive to January 1, 2000.

5

Justice, Superior Court

DATED: February / , 2002

6

Date Filed _____ 06-15-01 _____ _____ Cumberland _____ Docket No. _CV-01-322 _____

County

Action _____ Contract _____

Greg Shinberg

Nathan Szanton d/b/a
The Szanton Company

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Daniel L.Rosenthal Esq<br>One Portland Square<br>Portland ,Maine 04112-0586 | ROBERT M. HAYES, ESQ 775-6001<br>PO BOX 7250, PORTLAND ME 04112 |