STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2008 JUN 25 A 9: 11

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-677

SCOTT LIBERTY,
                    Plaintiff

v.

DAVID VAN DYKE and
BERMAN & SIMMONS, P.A.,
                    Defendants



ORDER ON
DEFENDANTS'
SECOND MOTION FOR
SUMMARY JUDGMENT

Before the Court is Defendants David Van Dyke and Berman & Simmons, P.A.'s Second Motion for Summary Judgment on all counts of Plaintiff Scott Liberty's Second Amended Complaint.

## BACKGROUND

From approximately October 2000 through January 2002, Defendants Berman & Simmons, P.A. and David Van Dyke ("Van Dyke"), an attorney with the firm, (collectively, the "Defendants") represented Plaintiff Scott Liberty ("Liberty") in Liberty's divorce proceedings. Various orders were entered by the Superior Court in 2001, including three orders based on a divorce settlement agreement entered into between Liberty and his now ex-wife. These orders concern parental rights and responsibilities, property distribution, and support obligations, *inter alia*. Among other things, these orders bar Liberty from having any contact with any of his three children without leave from the Court and approval by his now ex-wife.

After the third of these orders was issued, Liberty sought to set aside or modify the judgment due in part to his claim that Attorney Van Dyke agreed to

the settlement agreement that is the foundation of the third order without Liberty's authority. The Superior Court (Cole, J.) held an eleven-day trial on the matter in January 2004 and ultimately upheld the 2001 orders in an order issued in November 2004. The Law Court later affirmed this decision.

It is primarily with respect to these three 2001 orders and the events surrounding their issuance that Liberty now alleges legal malpractice against the Defendants. Liberty asserts five counts against the Defendants: breach of fiduciary duty, negligence, negligent infliction of emotional distress, intentional misrepresentation, negligent misrepresentation; he also asserts two alternative counts.[1] Liberty's alleged harm and damages include lost time with his children, irreparable damage to his relationship with his children, emotional distress, damage to his reputation and various pecuniary losses. He also seeks punitive damages. The Defendants filed their First Motion for Summary Judgment in 2007 arguing that Liberty's claims are barred by the doctrines of collateral estoppel and judicial estoppel. This Court (Crowley, J.) denied that Motion in December 2007. The Defendants have now filed this Second Motion for Summary Judgment on all counts of Liberty's Second Amended Complaint.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126. "A court may properly enter judgment in a case when the

---

[1] These two alternative counts are for breach of fiduciary duty and negligence relating to legal services rendered and actions taken by the Defendants during the time period when Liberty was a psychiatric inpatient at McLean Hospital in Belmont, Massachusetts.

2

parties are not in dispute over the [material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A genuine issue of material fact exists "when the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93 ¶ 9, 878 A.2d 504, 507. An issue of fact is material if it "could potentially affect the outcome of the suit." *Id.* An issue is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685. In response to a defendant's motion for a summary judgment, a plaintiff having the burden of proof at trial must produce evidence that, if produced at trial, would be sufficient to resist a motion for judgment as a matter of law. *Northeast Coating Technologies, Inc. v. Vacuum Metallurgical Co., Ltd.*, 684 A.2d 1322, 1324 (Me. 1996).

## DISCUSSION

### I.    Defendants' Motion for Summary Judgment

The Defendants have filed both a Renewed Motion for Summary Judgment and a Supplemental Motion for Summary Judgment as part of their Second Motion for Summary Judgment. The Defendants have three primary arguments: first, that Liberty's legal malpractice claims are barred by the doctrine of collateral estoppel; second, that Liberty cannot prove causation; and, third, that Liberty is not entitled to punitive damages. The Court will address each of these arguments in turn.

3

## A.    Collateral Estoppel

The Defendants renew the arguments made in their First Motion for Summary Judgment that Liberty's claims are barred by the doctrine of collateral estoppel.    For the reasons stated in this Court's previous Order, it denies the Defendants' Motion for Summary Judgment on the basis of collateral estoppel.[2]

## B.    Causation

In order to make out a claim for legal malpractice, a plaintiff must show (1) that his attorney breached the duty owed to the plaintiff to conform to a certain standard of conduct and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff. *Niehoff v. Shankman & Associates Legal Center, P.A.*, 2000 ME 214, ¶ 7, 763 A.2d 121, 124.    "Proximate cause exists in professional malpractice cases where 'evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence.'"    *Id.* ¶ 8, 763 A.2d at 124 (quoting *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778, 780-81).    Mere possibility of causation is not sufficient. *Id.* A plaintiff alleging malpractice must also show that he would have achieved a more favorable result but for the alleged malpractice. *Id.* ¶ 9, 757 A.2d at 124.    These rules of causation apply regardless of whether the

---

[2] To reiterate, the Defendants concede that Liberty did not raise any legal malpractice claims at any time prior to the current action nor was he required to do so. As such, the question of the Defendants' alleged malpractice was not "necessarily...determined by a prior final judgment" and collateral estoppel is not applicable. *See Larochelle v. Hodsdon*, 1997 ME 53, ¶ 11, 690 A.2d 986, 988-89 (quoting *Mutual Fire Ins. Co. v. Bragg*, 589 A.2d 35, 37 (Me. 1991)).

4

malpractice cause of action sounds in contract, negligence or breach of fiduciary duty. *Id.* ¶ 8, 757 A.2d at 124.

In *Corey v. Norman, Hanson & DeTroy*, the plaintiff sued the law firm that represented her in her divorce alleging that the firm committed malpractice by stipulating to the value of a marital asset that the plaintiff claimed was too low. 1999 ME 196, ¶¶ 2-3, 742 A.2d 933, 935-36. The law firm moved for summary judgment on the basis that the plaintiff could not prove that her damages were proximately caused by an act or omission by the firm. *Id.* ¶ 4, 742 A.2d at 936. The Law Court agreed with the firm:

> In order to avoid a summary judgment on NH&D's challenge to the sufficiency of Corey's evidence regarding proximate causation, Susan must show through expert testimony that the divorce judgment would have been more favorable to Susan if the value of the dental practice had been shown to be higher than the $37,700 agreed on by NH&D, i.e., that NH&D's negligence resulted in the divorce judgment being less favorable to her...Susan's Rule 7(d)(2) statement points to no admissible evidence to prove it more likely than not that the divorce judgment would have been more favorable to Susan if the value of the dental practice was shown to exceed the $37,700 value agreed on by NH&D. Nadeau [the plaintiff's expert] makes a general statement that he would testify about proximate cause, but he does not offer an opinion that the trial court would have accepted the higher value of the dental practice, or that if the court accepted a higher value, it would have awarded any part of the increase to Susan, or that if it did award a part of the increase to Susan, such increase would not be offset by a less favorable award of alimony. Such evidence is essential to Susan's case, see *Marshak v. Ballesteros*, 72 Cal. App. 4th 1514, 86 Cal. Rptr. 2d 1, 3-4 (Cal. Ct. App. 1999).

*Id.* ¶¶ 13-14, 742 A.2d at 940 (internal citations omitted).

In *Marshak*, the Court of Appeal of California held that a plaintiff asserting legal malpractice in a divorce action "must prove what the better outcome would have been" without the alleged malpractice. 72 Cal. App. 4th 1514, 86 Cal. Rptr. 2d 1, 3. The *Marshak* court acknowledged that there were triable issues as to

5

whether the attorneys had breached the standard of care, but held that summary judgment was nevertheless proper "because of the absence of evidence of damages resulting from the alleged malpractice." *Id.* The court continued, "[d]amages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable." *Id.* at 4 (quoting *In re Easterbrook*, 200 Cal. App. 3d 1541, 1544 (1988)) (internal quotations omitted).

The Defendants, perhaps utilizing the framework established in *Corey*, conflate proximate cause and damages in the instant case. That is, the Defendants argue that Liberty has not produced evidence of causation but their arguments actually speak to the issue of Liberty's inability to prove his losses as a result of the alleged malpractice. In support of their position, the Defendants point to Attorney Rubin's statements that it is not possible for him to know exactly what the trial judge would have ordered if not for the alleged negligence. Liberty emphasizes other statements in which Attorney Rubin states that it is his opinion that Liberty would have had a more favorable outcome but for Attorney Van Dyke's alleged malpractice: "And I suspect based on my years of [sic] in domestic relations cases that a different result would have occurred." Rubin's Deposition 55:21-23; "And I do believe that if that [the appointment of a guardian *ad litem*] would have taken place, any Justice would have been influenced by those recommendations and opinions." *Id.* 75:17-19; "I have said very clearly that Judge Cole would have been influenced by a guardian's report and recommendations. I cannot say with certainty what he would have accepted, but I do believe it is more probable than not that he would have – he would not have – if this was his independent order, not just a settlement agreement, but if it was

6

his independent order, he would not have placed Darlene [Liberty's ex-wife] in that place. And he would have done different." *Id.* 81:19-82:3; "If your client [i.e., Attorney Van Dyke] had done what I have articulated, the steps that have led up to this, I don't believe Justice Cole would have ever entered that order." *Id.* 182:19-22.

These statements are insufficient to prove damages proximately caused by the Defendants. Indeed, in the statements highlighted by Liberty, Attorney Rubin admits that he "cannot say with certainty what [the trial judge] would have" done in the absence of the alleged malpractice. Liberty's ability to prove his losses in the instant case is further eroded by the Law Court's recent decision affirming the District Court's grant of an extension of a protection from abuse order to Liberty's ex-wife and children against Liberty for a term of six years until January 2013. *See Copp v. Liberty*, 2008 ME 97, __ A.2d __.

Attorney Rubin states that the trial court would not have entered the orders it did but for Attorney Van Dyke's alleged negligence; but Attorney Rubin does not (and admits that he cannot) identify Liberty's losses. There is no evidence or even an allegation that Liberty's ex-wife would have accepted a settlement agreement different from the one she signed. Nor can Liberty's expert state what the trial court would have done in the absence of a settlement agreement between the parties. With respect to Attorney Van Dyke's alleged negligence in failing to have a guardian ad litem appointed in 2001, perhaps the source of the largest number of Liberty's complaints of malpractice, there is no evidence as to what a guardian ad litem would have found or recommended

7

with respect to Liberty's interactions with his children.[3] Even if the guardian ad litem had issued a report favorable to Liberty, there is no evidence that the trial judge would have accepted the recommendations. Finally, with respect to Liberty's allegations that Attorney Van Dyke intended to defraud the trial court in 2001 by filing a Rule 60(b) motion on the basis of newly-discovered evidence when in fact Attorney Van Dyke knew of this evidence before the entry of the divorce judgment, even if this Court were to accept these allegations as true, there is no evidence to show and no expert to testify that the property division would have been more favorable to Liberty but for the alleged fraud.

As Liberty has provided no evidence of the amount or value of his losses as a result of the alleged negligence, he cannot show that the divorce judgment (including property division and child custody/parental rights issues) would have been different let alone more favorable. The Law Court has stated that the inability of a malpractice suit plaintiff to show that the divorce judgment would have been different entitles the defendant to judgment as a matter of law. *Corey*, 1999 ME 196, ¶ 14, 742 A.2d at 940.

## C. Punitive Damages

As the Court grants summary judgment in favor of the Defendants for the reasons set forth *supra*, it need not and does not reach the Defendants' argument that Liberty is not entitled to punitive damages.

---

[3] This is particularly true given that, prior to the issuance of the three orders in 2001, Liberty had been convicted on multiple counts of domestic abuse, was forbidden from having contact with his ex-wife and children both as a probation condition and as a result of a protection from abuse order issued by the District Court, and Liberty's ex-wife had filed a complaint asserting spousal tort claims against him.

## II.    Defendants' Motion to Strike

On June 13, 2008, Liberty filed a Motion for Leave to File a Supplemental Brief in Opposition to Defendants' Supplemental Motion for Summary Judgment. The Court granted this Motion on June 13, 2008. That same day, the Defendants filed a Motion to Strike Liberty's supplemental brief. The Court denies the Defendants' Motion to Strike.

Therefore, the entry is:

> Defendants David Van Dyke and Berman & Simmons, P.A.'s Second Motion for Summary Judgment is GRANTED. Judgment for the Defendants.
>
> Defendants David Van Dyke and Berman & Simmons, P.A.'s Motion to Strike Plaintiff Scott Liberty's supplemental brief is DENIED.
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _24th_ day of _____, 2008.

Robert E. Crowley
Justice, Superior Court

9

JOHN BRANSON ESQ
PO BOX 7526
PORTLAND ME 04112

MARK RANDALL ESQ
183 MIDDLE ST
4TH FLOOR
PORTLAND ME 04112

MARTHA GAYTHWAITE ESQ
ROGER BRUNELLE ESQ
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
PO BOX 4726
PORTLAND ME 04112