STATE OF MAINE
CUMBERLAND, SS.

STATE OF MAINE
Cumberland ss. Clerk's Office
MAY 12 2016
RECEIVED

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-CV-13-558

ALDER STREET PROPERTIES, LLC,

      Plaintiff,

v.

JEWELL & BOUTIN, P.A. and
THOMAS JEWELL, ESQ.,

      Defendants.

ORDER ON DENFENDANTS' MOTION
FOR SUMMARY JUDGMENT

Before the court is Defendants Jewell & Boutin, P.A. and Thomas Jewell, Esq.'s motion for summary judgment on Plaintiff Alder Street Properties, LLC's claims for legal malpractice. Based on the following, Defendants' motion for summary judgment is denied.

I.    BACKGROUND

Plaintiff Alder Street Properties, LLC is owed and operated by David O'Donnell and Rudy Ferrante. (Defs. Supp. S.M.F. ¶ 1; Pl. Opp. S.M.F. ¶ 1.) O'Donnell and Ferrante are real estate developers who acquire real estate through limited liability companies. (*Id.* ¶ 2.) O'Donnell and Ferrante had previously acquired real estate through "bond for deed" transactions. (*Id.* ¶ 3.)

In 2007, an agent of William Simpson, an owner and operator of commercial real estate, offered to sell O'Donnell certain rental real estate in Portland's Bayside neighborhood controlled by an entity owed by Simpson (the "Alder Street Properties"). (Am. Compl. ¶ 10.) Under the terms of the proposed transaction, Simpson required a $350,000.00 down payment. (Defs. Add'l S.M.F. ¶ 11; Pl. Resp. S.M.F. ¶ 11.) At the suggestion of Ferrante, O'Donnell contacted Kevin Smith at Lender's Network, Inc. to help finance the transaction. (Am. Compl. ¶ 13.) Smith prepared personal financial statements concerning O'Donnell's finances, which Smith then

submitted to Thomas Toye for the purpose of inducing Toye to finance Plaintiff's acquisition of the Alder Street Properties. (*Id.* ¶ 14.) Toye agreed to extend Plaintiff a "bridge loan" to finance the down payment, which O'Donnell and Ferrante personally guarantied. (Defs. Add'l S.M.F. ¶ 13.)

Though the parties dispute the actual details, at some time in late 2007, O'Donnell, Ferrante, and/or Simpson asked Defendant Thomas Jewell, Esq. to draft the necessary documents to transfer the Alder Street Properties through a "bond of deed" transactions. (Defs. Supp. S.M.F. ¶¶ 8-10; Pl. Opp. S.M.F. ¶¶ 8-10.) Jewell had previously represented Simpson in a "bond for deed" transaction with another entity owned by O'Donnell and Ferrante. (*Id.* ¶¶ 4-5.) Jewell had also represented a third entity owned by O'Donnell and Ferrante in another real estate transaction. (*Id.* ¶ 7.) Despite the conflict of interest, Jewell agreed to prepare the documents for the "bond of deed" transaction. (*Id.* ¶ 9.) The closing for the transaction occurred on January 3, 2008.

Simpson filed for bankruptcy in 2009. (Defs. Add'l S.M.F. ¶ 17; Pl. Resp. S.M.F. ¶ 17.) The bankruptcy court held that "bond for deed" and "lease to purchase" contracts governing the Alder Street Properties transaction were "executory contracts," subject to termination at the election of the bankruptcy trustee. (*Id.* ¶ 18.) Accordingly, the bankruptcy trustee terminated Plaintiff's right to the Alder Street Properties. (*Id.* ¶ 19.)

Plaintiff was unable to obtain refinancing in order to pay-off the "bridge loan" from Toye, and Plaintiff defaulted on the loan. (*Id.* ¶¶ 14-16.) Toye sued O'Donnell on his personal guaranty of the "bridge loan" and obtained a judgment of $417,974.00. *In re O'Donnell*, 728 F.3d 41, 44 (1st Cir. 2013). O'Donnell and Ferrante subsequently filed for bankruptcy. (Defs. Add'l S.M.F. ¶ 20; Pl. Resp. S.M.F. ¶ 20.) The bankruptcy court determined that O'Donnell's

2

debt to Toye was non-dischargeable because O'Donnell's personal financial statements contained material misrepresentations. (*Id.* ¶¶ 22-23.)

On December 30, 2013, Plaintiff filed a complaint against Lender's Network, Inc., Kevin Smith, Thomas Jewell, Esq., Jewell's firm, Jewell & Boutin, P.A., and Jewell's partner in the firm, Daniel Boutin, Esq. Plaintiff amended its complaint on March 9, 2014. Plaintiff's amended complaint asserted counts of negligence, liability for professional conduct, negligent misrepresent and/or failure to disclose material facts, and breach of contract against all defendants. (Am. Compl. ¶¶ 23-33.) The amended complaint also asserted counts of failure to disclose a conflict of interest, failure to withdraw representation due to irreconcilable conflict, and breach of professional and fiduciary duty against Jewell, Boutin, and their firm. (*Id.* ¶¶ 34-44.) Lender's Network, Inc., Smith, and Boutin were subsequently dismissed from this action. Jewell and Jewell & Boutin, P.A. are the only remaining defendants.

Jewell and Jewell & Boutin, P.A. initially filed this motion for summary judgment on September 2, 2014. After an extension of time, Plaintiff filed its initial opposition to the motion on October 10, 2014. This action was stayed in June 2015 because of a family medical situation involving Plaintiff's counsel. A November 2015 hearing on the motion for summary judgment was also continued because Plaintiff's counsel had been hospitalized. A hearing on the motion for summary judgment was held in January 2016. On February 2, 2016, for good cause shown, the court permitted the parties to amend and supplement their filings regarding the pending motion for summary judgment. Plaintiff filed an amended opposition, an amended opposing statement of material facts, and supporting documents on February 12, 2016.[1] Defendants filed a

---

[1]   Maine Rule of Civil Procedure 56(h) provides: "A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise opposing statement." M.R. Civ. P. 56(h)(2). "The opposing statement may contain in a separately titled section any additional facts which the party opposing summary judgment contends raise a disputed issue for trial, set forth in separate

3

supplemental brief, a response to Plaintiff's additional statements of facts, and it own additional statement of material facts on March 14, 2016. Plaintiff filed a reply memorandum of law and a responsive statement of material facts on March 21, 2016.[2]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). When a defendant moves for summary judgment, the plaintiff must respond with evidence establishing a prima facie case for each element of their cause of action. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (internal citation and quotation marks omitted). The evidence proffered by the plaintiff "need

---

numbered paragraphs…" *Id.* The Court notes that Plaintiff's initial opposing statement of material facts, its amended opposing statement of material facts, and its statement of additional facts do not contain "separate, short, and concise" statements of fact. Rather, Plaintiff's statements of fact consist of long paragraphs containing of multiple assertions of fact.

[2]    Maine Rule of Civil Procedure 7 only permits the moving party to file a reply memorandum. M.R. Civ. P. 7(e). Because Plaintiff is the party opposing the motion for summary judgment, Plaintiff was not entitled to file a reply memorandum. Nor did the court's February 2, 2016, permit Plaintiff to file a reply memorandum. However, because Defendants' supplemental brief and additional statement of material facts raised new issues of fact, the court shall consider Plaintiff's reply memorandum and responsive statement of material facts.

4

not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759. If a plaintiff fails to present sufficient evidence on the essential elements, then the defendant is entitled to a summary judgment. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897.

III.    ANALYSIS

To assert a claim for legal malpractice, the plaintiff must prove that the defendant attorney breached a duty to conform to a certain standard of conduct owed to the plaintiff, and that the defendant's breach of duty proximately caused the plaintiff's injury or loss. *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214, ¶ 7, 763 A.2d 121. Additionally, a plaintiff must also prove that, but for the defendant's breach of duty, the plaintiff would have achieved a more favorable result. *Id.* ¶ 9.

In their initial motion for summary judgment, Defendants assert two grounds for summary judgment. First, Defendants assert that Jewell explicitly declined to serve as counsel to Plaintiff, and therefore, did not owe and did not breach a duty of care to Plaintiff. (Defs. Mot. Summ. J. 3.) Second, Defendants assert that Plaintiff has failed to assert any facts demonstrating that Jewell's actions proximately caused Plaintiff's damages. (*Id.*)

*A.    Whether Jewell Breached a Duty of Care Owed to Plaintiff*

"Attorneys are under a legal obligation to discharge their duties and execute the business entrusted to them with a reasonable degree of care, skill, and dispatch, and if a client is injured by the fault or negligence of the attorney, the attorney is liable." *Garland v. Roy*, 2009 ME 86, ¶ 19, 976 A.2d 940. In legal malpractice actions, expert testimony is usually required to establish the appropriate standard of care and whether the defendant attorney breached that standard of care, unless the breach or lack thereof is "so obvious" that it can be determined by the court as a

5

matter of law or is within the ordinary knowledge of a layperson. *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 26, 8 A.3d 677. Although breach is a question fact for the jury, the existence of a duty is a question of law for the court. *Estate of Smith*, 2013 ME 13, ¶ 17, 60 A.3d 759.

In support of their contention that Jewell did not owe or breach a duty of care to Plaintiff, Defendants assert that Jewell had previously represented Simpson as the seller in a "bond for deed" transaction with another LLC owned by O'Donnell and Ferrante. (Defs. Supp. S.M.F. ¶¶ 4-5.) In December 2007, O'Donnell, Ferrante, and Simpson met with Jewell and asked if he could "recycle" paperwork generated during the prior "bond for deed" transaction between the parties. (*Id.* ¶ 8.) Defendants assert that Jewell agreed to prepare the "bond for deed" documentation, but informed the parties that, because he had previously represented both parties in prior transactions, he had a conflict of interest and could not represent either side in this transaction. (*Id.* ¶ 9.) In an email dated January 3, 2008, Jewell reiterated to the parties that he had prepared initial drafts of a lease and the "bond for deed" documents as a "mere scrivener." (*Id.* ¶ 10, Ex. A.) Jewell further stated in the email, "I am not acting as attorney for either of you. You are both encouraged to have these reviewed by separate counsel." (*Id.*) Thus, according to Defendants, Jewell cannot be liable for breaching a duty he expressly declined to accept. (Defs. Mot. Summ. J. 3.)

In response, Plaintiff asserts that the December 2007 meeting between Jewell, Ferrante, O'Donnell, and Simpson never occurred and that Jewell never discussed the limits of his professional obligations during such a meeting. (Pl. Opp. S.M.F. ¶¶ 8-9.) Plaintiff also asserts that Jewell was not acting as a "mere scrivener" in drafting documents regarding the transactions. (*Id.*) Plaintiff asserts that Jewell undertook representation of both parties in the

6

transaction, drafted numerous documents unique to the transaction and applied independent professional judgment in drafting the terms and provisions, and included a variety of provisions that altered the obligations and responsibilities of the parties to the disadvantage of the Plaintiff without consulting O'Donnell or Ferrante. (Pl. Add'l S.M.F. ¶¶ 15, 19-20.) Plaintiff further asserts that Jewell assured O'Donnell and Ferrante that changes in the documentation were routine. (*Id.* ¶ 17.) Plaintiff asserts that Jewell failed to advise O'Donnell and Ferrante of the risk involved in the transaction, failed to disclose material facts, and made misrepresentations regarding the transaction. (*Id.* ¶ 21-22.)

Plaintiff also cites an affidavit from its expert witness, Edward S. MacColl, Esq. (*Id.* ¶¶ 25-33.) According to MacColl, there was an obvious conflict of interest in this case, which was not properly explained or waived. (MacColl Aff. ¶ 8.) MacColl avers that a competent attorney owed Plaintiff a duty to explain the risk associated with the transaction and to draft the documents as to minimize any unnecessary, unfair, or commercially unreasonable risk to Plaintiff. (*Id.* ¶ 9.) MacColl also asserts that Jewell had a duty to draft the documents to avoid risks Plaintiff did not understand and did not accept. (*Id.*) MacColl asserts Jewell was not acting as a "mere scrivener" because he exercised judgment in drafting the documents and drafted the documents in a way that reallocated the risk to Plaintiff. (*Id.* 10.) MacColl asserts that Jewell breached the duty owed to Plaintiff by drafting documents that were internally inconsistent and not commercially reasonable, by failing to warm Plaintiff of the risks involved in the transaction as drafted, by failing to discourage the transaction, and by failing to properly disclose and waive the conflict of interest. (*Id.* ¶¶ 12-15.)

Based on foregoing, there is a genuine issue of material fact regarding whether the December 2007 meeting between Jewell, O'Donnell, Ferrante, and Simpson occurred and

7

whether Jewell properly advised O'Donnell and Ferrante regarding the conflict of interest. Furthermore, the affidavit from Plaintiff's expert sets forth sufficient prima facie evidence regarding the standard of care owed to Plaintiff by Jewell and whether Jewell breached that standard of care.

B.      *Whether Jewell's Actions Proximately Caused Plaintiff's Damages*

Regarding causation, Defendants argue that O'Donnell and Ferrante are savvy businessmen who negotiated the deal with Simpson on their own and nothing Jewell said induced Plaintiff to purchase the properties; that there is no evidence in the record demonstrating that, had Jewell advised Plaintiff of the substantial risks of the transaction, Plaintiff would not have purchased the properties; and that Plaintiff's damages were the direct result of O'Donnell's own fraudulent conduct, not Jewell's actions. (Defs. Mot. Summ. J. 4; Defs. Suppl. Br. 4-8.)

In legal malpractice actions, proximate cause exists where the evidence, and any reasonable inferences drawn from the evidence, demonstrate that the defendant attorney's negligence played a substantial part in bringing about or actually caused the plaintiff's injury or damages and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the attorney's negligence. *Niehoff*, 2000 ME 214, ¶ 8, 763 A.2d 121. The mere possibility of proximate causation is insufficient. *Id.* If the plaintiff's assertions of causation rest on speculation or conjecture, then the defendant is entitled to judgment as a matter of law. *Id.*

In support of their arguments, Defendants assert O'Donnell and Ferrante are experienced real estate developers that have bought and sold many properties as individuals and as members of various entities and have previously utilized "bond for deed" transactions to acquire real estate. (Defs. Supp. S.M.F. ¶¶ 2-3; Defs. Add'l S.M.F. ¶¶ 3-4.) Defendants cite O'Donnell's deposition testimony, during which he testified, "most of the purchases I had always done were

8

bond for deeds... And it was kind of the way I always did – that's the way I learned to do deals was through bond for deeds." (Defs. Add'l S.M.F. ¶ 8; O'Donnell Dep. 65:16-66:1.)

Defendants also cite to the opinion of the First Circuit in O'Donnell's bankruptcy case. (Defs. Add'l S.M.F. ¶¶ 20-23); *See In re O'Donnell*, 728 F.3d 41 (1st Cir. 2013). After Plaintiff defaulted on the "bridge loan," Toye sued O'Donnell on his personal guaranty and obtained judgment against O'Donnell. (Defs. Add'l S.M.F. ¶¶ 16, 20-21); *In re O'Donnell*, 728 F.3d at 44. After O'Donnell declared bankruptcy, the bankruptcy court found that O'Donnell had intentionally or recklessly caused his personal financial statements to be published to Toye containing material falsities upon which Toye reasonably relied in making the loan to Plaintiff. (Defs. Add'l S.M.F. ¶ 22); *In re O'Donnell*, 728 F.3d at 44-45. Accordingly, the bankruptcy court held that the loan was non-dischargeable, which the First Circuit affirmed.[3] (Defs. Add'l S.M.F. ¶ 23); *In re O'Donnell*, 728 F.3d at 48.

---

[3] In their supplemental brief, Defendants cite additional facts in support of their contention that Plaintiff cannot prove Jewell's conduct proximately caused Plaintiff's damages. First, Defendants cite deposition testimony from Plaintiff's expert MacColl in which he concedes that if Jewell had apprised O'Donnell and Ferrante of the risk associated with the transaction, and O'Donnell and Ferrante decided to proceed with the "bond for deed" transaction anyway, then Plaintiff would still be in the same position it is today. (Defs. Suppl. Br. 6.) MacColl also appears to further concede that there no way to know for certain whether O'Donnell and Ferrante would have walked away from the transaction had they known the full risks associated with it. (*Id.*) Second, Defendants also cite O'Donnell's deposition testimony in which O'Donnell states that he cannot say what he would have done differently in 2008 had Jewell apprised him of the risks involved in the "bond for deed" transaction, and that he was intent on "doing the deal." (*Id.* at 6-7.) These assertions of fact clearly address the issues of whether, but for Jewell's alleged breach of duty, Plaintiff would have achieved more favorable result and whether Jewell's actions played substantial part in bringing about or directly resulted in Plaintiff's damages.

However, these assertions of fact are not included Defendants' statements of material facts. *See* (Defs. Supp. S.M.F. & Add'l S.M.F.) Maine Rule of Civil Procedure 56 contemplates that all assertions of facts for which the moving party contends there is no genuine issue shall be set forth in a separate statement of material facts. M.R. Civ. P. 56(h)(1). Rule 56 further states, "The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." M.R. Civ. P. 56(h)(4). Therefore, because Plaintiff failed to cite these assertions of fact in either of its statements of material facts, the court shall not consider these assertions of fact. Even if the court did consider these assertions, Plaintiff has still set forth sufficient material facts in opposition to deny summary judgment.

In opposition, Plaintiff asserts that, although O'Donnell and Ferrante were experienced in commercial real estate transactions, there were never advised by Jewell regarding the risks of alternative financing arrangements or how to avoid such risks. (Pl. Opp. S.M.F. ¶ 2.) Plaintiff further asserts that, as a result of Jewell's failure to properly draft the "bond for deed" documents, it was left unprotected when Simpson defaulted and filed for bankruptcy, resulting damages. (Pl. Add'l S.M.F. ¶ 23.)

Plaintiff also cites the affidavit of its expert witness, MacColl. (*Id.* ¶¶ 25-33.) According to MacColl, Plaintiff's position and rights under the terms of the transaction "were the most tenuous as result of the manner in which the deal was otherwise structured." (*Id.* ¶ 16(c).) MacColl further asserts that Jewell had only a modest understanding of the risk associated with executory contracts in the event of a seller's bankruptcy, and that the risk that the "bond for deed" transaction in this case would be treated at an executory contract was exacerbated by the inclusion of provisions transforming of part of transaction into a "lease for already leased property." (*Id.* ¶ 16(e)-(f).) MacColl also asserts that the risks to Plaintiff were further exacerbated by the inclusion of provisions shifting the seller's risks and liability for debt, including penalties under seller's mortgage, to the Plaintiff. (*Id.* ¶ 16(g).) Accordingly, MacColl asserts that the Plaintiff's damages were the direct and reasonably foreseeable result of Jewell's failure to discourage the transaction, failure to structure a fair, balanced, and commercially reasonable transaction, and his failure to properly disclose and waive the conflict of interest. (MacColl Aff. ¶¶ 6, 13-15.)

Based on the foregoing, there is sufficient evidence in the record to create genuine issue of fact regarding proximate causation. There are genuine issues of fact regarding whether Plaintiff's damages were proximately caused by O'Donnell's own fraudulent conduct, Jewell's

10

failure to discourage the transaction, his failure to properly draft the documents in a commercially reasonable manner, or his failure to properly disclose the conflict of interest.

Therefore, because there are genuine issues of fact regarding the duty of care, whether Jewell breached a duty of care, and whether Jewell's conduct proximately caused Plaintiff's damages, the court denies summary judgment.

## IV. CONCLUSION

Based on the foregoing, Defendants Jewell & Boutin, P.A. and Thomas Jewell, Esq.'s motion for summary judgment is denied.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: May 12, 2016

Lance E. Walker
Justice, Superior Court

11