STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL ACTION
                                                  DOCKET NO. CV-10-64

THERESA PELKEY

    Plaintiff,

v.                                                **DECISION AND ORDER
                                                  ON DEFENDANTS'
                                                  MOTION FOR
                                                  SUMMARY JUDGMENT**

C. PETER BOS, ESQ. and
GRAY and PALMER, PA.

    Defendants.


On April 14, 2010 Plaintiff filed a four-count complaint against the Defendants. Three of the counts allege theories against Defendant Bos: Count I alleges legal malpractice, Count II alleges breach of contract, and Count III alleges misrepresentation. Count IV sets forth a respondeat superior theory of liability against Defendant Gray and Palmer, P.A. for the conduct of Defendant Bos. On March 3, 2011 Defendants filed a M.R.Civ. P. 56 motion for summary judgment, on March 24, 2011 Plaintiff filed an objection, and on March 30, 2011 Defendants filed their reply. The Court held a hearing on Defendant's motion on April 20, 2011.

Having reviewed the parties' filings and reflected upon the parties' arguments at hearing, the Court grants the Defendants' motion in part and denies the Defendants' motion in part.

*FACTUAL BACKGROUND*

The Court accepts the following facts as undisputed[1] *for the purposes of deciding this motion for summary judgment*:

    1.    Plaintiff Theresa Pelkey and Michael Pelkey were divorced on November 8, 2005. The Divorce Judgment ordered that Michael Pelkey pay Plaintiff spousal support of $700.00 per month for five

---

[1] During the April 20, 2011 hearing, the Court recited, and the parties orally represented, that no dispute exists as to those facts recounted in the Factual Background section of this Order.

years and awarded Michael Pelkey the real estate located at 432 Puddledock Road, Charleston, Maine;

2. Thereafter, Plaintiff Theresa Pelkey and Michael Pelkey renewed their relationship, began living together again at Michael Pelkey's residence and planned to re-marry;

3. Michael Pelkey died intestate on August 27, 2008;

4. Michelle Paige-Buttoli was appointed as personal representative of Michael Pelkey's estate on September 2, 2008;

5. On October 20, 2008 the plaintiff filed a claim against the Pelkey Estate in the amount of $18,900 for spousal support (it appears that she did so in a pro se capacity, but that is unclear);

6. The Personal Representative of the Estate of Michael Pelkey disallowed Plaintiff's claim for spousal support on November 7, 2008. The Notice of Disallowance did not contain any statement with respect to the time frame to challenge the disallowance;

7. Defendant Bos did not pursue the disallowed claim in the Probate Court;

8. On January 9, 2009 Defendant Bos, as attorney for Theresa Pelkey, filed a Motion to Enforce the spousal support provision within the Divorce Judgment in the Newport District Court;

9. On May 28, 2009 the District Court granted Defendant Bos' motion to withdraw from representing Theresa Pelkey on the pending Motion to Enforce the Divorce Judgment;

10. On August 10, 2009, while Plaintiff was proceeding pro se, the District Court denied Plaintiff's Motion to Enforce the Divorce Judgment for two reasons: (a) the motion was untimely; and (b) finding that an award of spousal support ceases upon the death of the payor unless otherwise stated in the Divorce Judgment. There was no provision in the Pelkeys' Divorce Judgment that the award of spousal support would survive the death of the payor;

11. Plaintiff Theresa Pelkey held no legal title to the real estate at 432 Puddledock Road in Charleston, Maine at the time of Michael Pelkey's death;

12. The Personal Representative of the Estate of Michael Pelkey filed a forcible entry and detainer action in the Newport District Court, *Buttoli v. Pelkey*, SA-2008-159. On October 10, 2008, the Court ruled in favor of Theresa Pelkey;

13. By February 9, 2009, Theresa Pelkey understood that Attorney Bos had stated that he was not representing her on the eviction matter; and

14. Defendant Bos never pursued any claim on behalf of Plaintiff Theresa Pelkey for return of her personal property which she alleges was left at the Puddledock Road property when the locks were changed preventing her entry, for $10,000.00 she claims she had earlier deposited in Michael Pelkey's bank account, for equity she claimed in Michael Pelkey's residence, for wrongful eviction, and/or for not pursuing a claim involving the impropriety of Michelle Paige-Buttoli serving as the personal representative of the Estate of Michael Pelkey.

## STANDARD OF REVIEW

"Summary judgment is appropriate when review of the parties' Statements of Material Facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.*; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. The court will review the evidence in the light most favorable to the non-moving party. *Cookson v. Brewer School Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, 281.

Summary judgment is appropriate unless there is sufficient evidence in favor of the non-moving party to support a jury verdict in favor of the non-moving party. *Biette v. Scott Dugas Trucking and Excavating Inc.*, 676 A. 2d 490, 494 (Me. 1996). Summary judgment for a defendant is proper when the plaintiff bears the burden of proof on an essential issue and it is clear that a defendant would be entitled to a directed verdict at trial if plaintiff presented the evidence before the court at the summary judgment stage. *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995). "[T]o resist a summary judgment motion 'a plaintiff must establish a *prima facie* case for each element of his cause of action.'" *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933, 938. The function of summary judgment is to permit the Court to determine whether a triable issue of fact exists, and there is no issue for trial unless there is sufficient evidence favoring the non-moving party to support a verdict in favor of that party. *Id.; see also Champagne v. Mid-Maine Medical Center*, 1998 ME 87, ¶ 9, 711

3

A.2d 842, 845 (judgment for defendant as a matter of law is proper when a verdict for the plaintiff would be based on conjecture or speculation).

It is well-settled in this State that "[t]o prove attorney malpractice, a plaintiff must show: (1) a breach by the defendant of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of that duty proximately caused an injury or loss to the plaintiff." *Corey,* 1999 ME 196, ¶ 10, 742 A.2d at 938-39. As a general rule, "expert evidence is required in a legal malpractice case to establish the attorney's breach of duty except in cases where the breach or lack thereof is so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen." *Jim Mitchell & Jed Davis v. Jackson,* 687 A.2d 1014, 1017 (Me. 1993); *accord Kurtz & Perry, P.A., v. Emerson,* 2010 ME 107, ¶¶ 26, 8 A.3d 677, 683. In addition to establishing, generally by expert testimony, the requisite standard of care and breach thereof, the plaintiff must also establish the proximate cause prong of the analysis and must demonstrate "that he or she would have achieved a more favorable result but for the alleged legal malpractice." *Neihoff v. Shankman & Assocs. Legal Ctr., P.A.,* 2000 ME 214, ¶ 9, 763 A.2d 121, 124. "Proximate cause exists in professional malpractice cases where 'evidence and inferences that may reasonably be drawn from the evidence indicates that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either the direct result or a reasonably foreseeable consequence of the negligence.'" *Neihoff,* 2000 ME 214, ¶ 8, 763 A.2d at 124 *(quoting Merriam v. Wanger,* 2000 ME 159, ¶8, 757 A.2d 778, 780-81). While proximate cause is generally an issue for the fact-finder, *Klingerman v. SOL Corp. of Maine,* 505 A. 2d 474 (1986), the court may enter

4

judgment for a defendant if proximate cause rests on "pure speculation or conjecture." *Neihoff,* 2000 ME 214, ¶ 8, 763 A.2d at 124 (citation omitted).

The Law Court has held that in the context of a case where the attorney's alleged "negligence is in failing to plead or timely plead .... [r]equiring the plaintiff to demonstrate a more favorable result would have been achieved is more problematic... ." *Id.* This is because "few results from a factfinder in a civil case can be predicted as more likely than not." *Id.* (citation omitted). Consequently,

> ... a plaintiff in a 'failure to plead' legal malpractice action must demonstrate [at the summary judgment stage] that there are facts in dispute which are sufficient to allow a jury to conclude that: (1) the defendant attorney was negligent in representation of the plaintiff; and (2) the attorney's negligence caused the plaintiff to lose an opportunity to achieve a result, favorable to the plaintiff, which (i) the law allows; and (ii) the facts generated by the plaintiff's ... [Statement of Material Facts] would support, if the facts were believed by the jury.

*Id.* ¶ 10, 763 A.2d at 124-25. "Where a plaintiff generates factual disputes on these issues, summary judgment must be denied and the plaintiff is entitled to proceed to trial." *Id.*

## DISCUSSION

Plaintiff alleges that Defendant Bos negligently represented her in the following ways:

1. By failing to secure a favorable result on Plaintiff's claim for spousal support;

2. By failing to pursue a claim for Plaintiff to recover certain articles of personal property purportedly left at the 432 Puddledock Road residence;

3. By failing to pursue a claim for $10,000.00 that Plaintiff alleges to have deposited in Michael Pelkey's bank account over a year before he died;

4. By failing to pursue a claim for equity she claimed in Michael Pelkey's residence; and

5

5. By failing to pursue a claim for wrongful eviction.[2]

The Court will address each of these claims in disposing of the Defendants' Rule 56 motion.

Count I: Negligence

### A. Spousal Support

On or about January 8, 2009, Defendant Bos filed a Motion to Enforce Theresa and Michael Pelkey's Divorce Judgment in the Newport District Court. There is no factual dispute that Defendant Bos represented Plaintiff in an attempt to secure payment to her for spousal support after her ex-husband's (the payor's) death. The alleged negligence is premised on: (a) the District Court being substantively in error when it ruled that the spousal support claim did not survive the payor's death; and (b) Defendant Bos not filing a timely challenge.

The decision of the District Court very clearly states two independent reasons for denying Theresa Pelkey's motion to enforce the spousal support provision in the Divorce Judgment. With respect to the first reason, the District Court wrote as follows in denying the motion to enforce:

> Both in 2005 and currently, the statute governing spousal support expressly provided that spousal support does *not* survive the death of either party unless the Judgment explicitly provides otherwise. 19-A M.R.S. §951-A (8) ("An order awarding, denying or modifying spousal support may provide that the award survives the death of the payee or payor, or both. *Unless otherwise stated in the order awarding spousal support*, the obligation to make any payment pursuant to this section ceases upon the death of either the payee or the payor with respect to any payment not yet due and owing as of the date of death.") (emphasis added). The statutory language is clear – the divorce judgment must expressly state that the spousal

---

[2] Plaintiff informed the Court during the April 20, 2011 hearing that she did not intend to pursue her claim that Defendant Bos negligently failed to contest the propriety of Michelle Paige-Buttoli serving as the personal representative of the Estate of Michael Pelkey; therefore, this aspect of Plaintiff's case is dismissed.

6

> support obligation survives the death of the payor. In light of this language the court cannot interpret a fixed-year obligation as also impliedly providing that the award survives the payor's death if he dies during that time period. In short, Plaintiff does not have a claim to enforce as it pertains to support.

(Def.'s Supp. S.M.F. ¶¶ 9-13 & Ex. I) (providing the District Court's disposition in *Pelkey v. Estate of Michael E. Pelkey,* NEW-FM-05-019 (Me. Dist. Ct., Pen. Cty., August 10, 2009). This Court finds that the substantive ruling of the District Court was an independent basis for the denial of the motion, and a sufficient basis, standing alone, for the District Court's decision. Moreover, this Court is firmly convinced that the District Court's Decision was legally correct, and for this reason, Plaintiff's malpractice claim against Defendant Bos (and Defendant Gray and Palmer, PA) with respect to spousal support fails as a matter of law. *See Theberge v. Theberge,* 2010 ME 132, ¶ 24, 9 A.3d 809, 815; *Hess v. Hess,* 2007 ME 82, ¶ 26, 927 A.2d 391, 397.

Whether Plaintiff frames her spousal support claim in terms of Defendant Bos' alleged negligence in failing to pursue an appeal with the Law Court after the District Court's decision (at a time he no longer represented her) or in terms of Defendant Bos' alleged negligence in failing to challenge the Probate Court's disallowance of spousal support claim as against the estate or not pursuing the matter in a timely fashion, is inconsequential. Even if the Court were to assume that Defendant Bos breached the applicable duty of care, the fact remains that Plaintiff's spousal support claim has no "basis in law." *Neihoff,* 2000 ME 214, ¶ 10, 763 A.2d at 125; *see also Schnieder v. Richardson,* 411 A.2d 656, 658 (Me 1979) ("[M]ere negligence on the part of an attorney is not sufficient to impose liability if, for example, his client's claim is meritless or barred

7

by the statute of limitations. Such negligence is considered "malpractice in a vacuum," since no damages could possibly flow therefrom.") (citations omitted).

### B. All Other Claims

There is a factual dispute about the breadth of Defendant Bos' representation of the Plaintiff on her claims, and at this stage of the litigation the Court construes the facts in the light most favorable to the Plaintiff as the non-moving party. Therefore, for purposes of deciding this Motion for Summary Judgment, the Court *assumes* that Defendant Bos represented the Plaintiff on all the matters alleged in her Complaint. (*See* Def.'s Mem. of Law 5 n.2.)

As indicated above, in a professional malpractice action based on an attorney's alleged "failure to plead" it is incumbent on the Plaintiff, in order to survive summary judgment review, not only to show that Defendant Bos breached the standard of care, but also that she lost the opportunity to achieve a favorable result on a claim or claims that have both a legal and factual basis. *Niehoff,* 2000 ME . ¶ 10, 763 A.2d at 124-25.

The Court discusses the factual and legal basis of each claim made part of the malpractice count in turn.

### 1. The Personal Property Claim

The Plaintiff first asserts that Defendant Bos failed to pursue a claim for the return of certain personal property from the Estate of Michael Pelkey. The factual basis for this claim appears intertwined with the Plaintiff's claim of wrongful eviction to the extent the locks at 432 Puddledock Road were changed prior to the issuance of a writ of possession in a second forcible entry and detainer action filed in Newport District Court. (Pl. Opp. S.M.F. ¶ 3; Pelkey Dep. 10.) With the locks changed and with Plaintiff presumably unable to enter the residence she shared with her deceased ex-husband, she asserts that

8

she was unable to recover or remove certain articles of personal property she kept at the home—most notably, part of a coin collection Plaintiff purportedly inherited from her father (Pelkey Dep. 107; *see also* Compl. ¶ 14).

A factual dispute remains concerning what, if any, of the Plaintiff's personal property remained at the 425 Puddledock Road property. (*See* Bartlett Dep. 38.) Notwithstanding the factual dispute, Attorney Bartlett testified that had Defendant Bos brought a claim against the estate and "if [Plaintiff] had been able to present [her personal property claim] in probate court" the "likely outcome" of the claim would have been in her favor. (*See* Pl.'s Opp. S.M.F. ¶ 3; Bartlett Dep. 38.)[3] In most "failure to plead" malpractice cases, factual disputes about the viability of the underlying claim exist. To survive summary judgment in a 'failure to plead' case, the Plaintiff need only establish that she lost an opportunity to achieve a favorable result "which (i) the law allows; and (ii) the facts generated by the Plaintiff would support, if . . . believed by a jury." *Neihoff*, 2000 ME 214, ¶ 10, 763 A.2d at 125. Plaintiff has succeeded in this effort, and summary judgment must be denied with respect to the personal property claim.

### 2. $10,000 Claim

Plaintiff also asserts that Defendant Bos failed to make any attempt to recover a sum of $10,000 dollars Plaintiff alleges she deposited into a bank account, held solely in Michael Pelkey's name, such deposit(s) having been made a year prior to his August,

---

[3] In fact, Plaintiff received legal advice from Pine Tree Legal on February 9, 2009 recommending that she not pursue a claim for her personal property until after the criminal theft charge pending against her had been resolved due to the potential effect evidence in the civil case might have on criminal charges.

9

2008 death.[4] (*See* Pelkey Dep.107.) While there is relatively scant evidence in the summary judgment record memorializing Plaintiff's transfer of $10,000 into Michael Pelkey's personal account[5], Plaintiff's testimony, if believed, provides a factual basis for this claim. (*See* Def.'s Supp. S.M.F. ¶ 18; Ex. D(2)). It is sufficient at this point that Plaintiff's $10,000 claim has a basis in law, and a fact-finder could find in Plaintiff's favor if her testimony were believed. Thus, this claim has the essential elements necessary for the $10,000 claim to survive summary judgment.

### 3. Home Equity Claim

Plaintiff also alleges that Defendant Bos failed to pursue a claim to recover an "equitable" interest Plaintiff alleges she had in the 432 Puddledock Road residence. The parties do not dispute that Plaintiff and her ex-husband Michael Pelkey were divorced on November 8, 2005. (Def.'s Supp. S.M.F. ¶ 1.) Neither do the parties dispute that as part of the 2005 divorce settlement Plaintiff received $50,000 for her interest in the property in exchange for legal title being vested solely in her ex-husband, Michael Pelkey. (Def.'s Supp. S.M.F. ¶ 23; Pl.'s Opp. S.M.F. ¶ 10.) Thereafter, and for a period of approximately two years prior to Michael Pelkey's death in August 2008, Plaintiff resumed living with her then ex-husband at 432 Puddledock Road. Plaintiff asserts that during this period of

---

[4] The Complaint recites as follows: "The plaintiff had given $10,000 of her own funds for Mr. Pelkey to hold in his bank account at Maine Savings Federal Credit Union in Corinth, Maine. The parties intended to use that sum for fertility treatment and the funds were given by the plaintiff to Michael *because Theresa was on social security disability benefits for her depression.*" See Complaint ¶ 13. (emphasis added). To the extent the purpose of this transfer was to defraud the Social Security Administration, then a bar to this claim may exist.

[5] The bank statements from Maine Savings Federal Credit Union made part of the summary judgment record generally show that between July 7, 2007 and August 1, 2007, Michael Pelkey's Primary Share Account increased from $5,511.56 to $12,561.55 and that additional deposits of $2000.00 and $500.00 were deposited into his Primary Draft Account and Primary Share Account, respectively, on the latter date. (*Id.*) In total, Michael Pelkey's various accounts at Maine Savings grew by approximately $9,500 in a 20-day period between these dates. This evidence, along with Plaintiff's testimony, (*see* Pelkey Dep. 106-07), forms the factual basis for the $10,000 claim against Michael Pelkey's estate.

10

co-habitation she contributed to mortgage payments on the property and assisted monetarily with other improvements—such that she claims to have accumulated new, post-divorce "equity" in the at 432 Puddledock Road property. (Bartlett Dep. 37.) To the extent that a jury could believe Plaintiff's representations, and Attorney Bartlett's assertion that Defendant Bos' failure to pursue her equity claim against the Pelkey Estate in Probate Court caused her to "lose the opportunity" to achieve a favorable result in that forum, Plaintiff has a legal basis for the claim and she has generated disputed factual issues relevant to the "suit within a suit" inquiry; thus, the home-equity claim survives summary judgment.

### 4. "Wrongful Eviction" Claim

Finally, it appears that the wrongful eviction claim pertains to Plaintiff having lost the possession/occupancy of the 432 Puddledock Road home without proper process (locks changed). Plaintiff claims that Defendant Bos made no effort to pursue a "wrongful eviction" claim on her behalf against Michael Pelkey's Estate. The Defendant asserts, and the Plaintiff admits, in the summary judgment pleadings that she "knew by early February 2009 that Attorney Bos said he was not representing her in the eviction dispute." (Def.'s Supp. S.M.F. ¶ 32; Pl.'s Opp. S.M.F. ¶ 19.) Thus, Plaintiff had over three months before any claim against Michael Pelkey's estate would have been barred by the applicable statute of limitations. *See* 18-A M.R.S. 3-803(a)(2).[6]

While Plaintiff and Defendant Bos may have had differing opinions on the merits of pursuing a wrongful eviction claim and whether Defendant Bos had in fact been

---

[6] Accepting that the Defendant's recitation of when the statute of limitations expired as accurate, Plaintiff could have lodged a claim—involving the alleged wrongful eviction, or otherwise—against Michael Pelkey's Estate until May 27, 2009, or, nine months after his death. (*See* Def.'s Mem. in Supp. of Mot. Summ. J. 15.)

11

retained to pursue the claim in the first place, (*compare* 6/16/10 Pelkey Dep. 101, 104-05; 10/13/10 Pelkey Dep. 14-15; Def.'s Interrogatories to Pl. ¶ 6 *with* Bos Dep. 33-35), a question remains whether Defendant Bos, if he represented the Plaintiff on the wrongful eviction claim, took the necessary steps to cease his representation. In particular, if Defendant Bos represented the Plaintiff on the wrongful eviction matter, a question remains whether he was required upon ceasing his representation to inform Plaintiff about the time limitation to file a claim against the Estate.[7]

Employing the *Neihoff* standard, and construing the facts in the light most favorable to the Plaintiff, the facts asserted by the Plaintiff, if believed, provide support for the wrongful eviction claim; and thus, the wrongful eviction claim survives summary judgment.

5. Potential Availability of Common Law Claims Against Michele Paige-Buttoli

Defendant also argues that Plaintiff cannot establish the proximate cause element of her professional negligence claim because she still has the ability to pursue common law claims against Michele Paige-Buttoli, individually. The analysis here is two-fold. First, Defendant Bos argues that because Plaintiff has failed to pursue common law claims against Michele Paige-Buttoli, any damages related to the claims against him would be mere "speculation or conjecture." (Def.'s Mem. 13.) Secondly, the Defendant urges that "the plaintiff cannot prove she lost an opportunity for a favorable result [with respect to the claims against Michael Pelkey's Estate] if an alternative avenue to achieve the same favorable result still exists." (*Id.*)

---

[7] Whether Plaintiff knew about the limitations period and was left sufficient time to pursue the wrongful eviction claim, either by herself or with the assistance of alternative counsel, after Defendant Bos made it clear that he would not be representing her for that purpose, is left for trial.

Whether Plaintiff has the ability to pursue common law claims against Michele Paige-Buttoli individually, or others, is not known based on the summary judgment record, nor is it known whether these claims would be identical to the claims against the Estate nor whether the potential for recovery would be the same. Therefore this argument does not mandate summary judgment

### Counts II-IV: Breach of Contract, Misrepresentation, Respondeat Superior Liability.

The Plaintiff also alleges a breach of contract claim, a misrepresentation claim, and that Defendant Bos' firm, Gray & Palmer, is otherwise liable for the losses she suffered under a theory of respondeat superior. Because the factual basis supporting these theories of recovery is the same as the facts that would support the Plaintiff's professional negligence claim, the success or failure of these claims at the summary judgment stage is the same as the success or failure on the professional negligence claim. Consequently, the other theories remain viable insofar as the claims contained within the Plaintiff's professional negligence action survive summary judgment disposition.

The entry is:

1. Defendants' M.R. Civ. P. 56 Motion for Summary Judgment, filed on March 3, 2011, is **GRANTED** with respect to the spousal support claim contained in all Counts, but **DENIED** in all other respects.

2. This order is incorporated into the docket pursuant to M.R. Civ. P. 79(a).

Date: May 21, 2011

Ann M. Murray
Justice, Superior Court

13