STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-418

*TDW-Cum 2/11/2014*

LAW OFFICES OF PETER THOMPSON
& ASSOCIATES P.A.,

Plaintiff

v.

LOWELL GERBER, et al

Defendants

STATE OF MAINE
Cumberland ss. Clerk's Office

FEB 1 1 2014

RECEIVED

ORDER

Before the court is a motion for summary judgment by plaintiff Law Offices of Peter Thompson and Associates P.A. and by third party defendants Peter Thompson and Chad Hansen.

The Thompson Law Office initiated this action to collect a contingent fee allegedly owed by two former clients, defendants Lowell Gerber, M.D., and Nurse Practitioner Danielle Duval, based on a settlement of Gerber's and Duval's claims against Down East Community Hospital (DECH) and certain individuals affiliated with DECH (collectively, the DECH parties).

Dr. Gerber and Ms. Duval have denied that any contingent fee is owed and have asserted counterclaims against the Thompson Law Office, against Attorney Peter Thompson individually, and against Chad Hansen, another attorney in the Thompson Law Office, for breach of contract, legal malpractice, and disgorgement.[1] The

---

[1] Although named as third party defendants, attorneys Thompson and Hansen technically do not qualify as persons who may be liable to Gerber and Duvall for the Thompson Law Office's claim against Gerber and Duval. See M.R.Civ.P. 14(a). However, no objection to this effect has been raised on Thompson and Hansen's behalf, probably because Thompson and Hansen would otherwise qualify as additional parties on Gerber and Duval's counterclaim against the

disgorgement claim has since been withdrawn. See Defendants' Opposition to Motion for Summary Judgment dated October 2, 2013 at 27.

The Thompson Law Office, Thompson, and Hansen (collectively, the Thompson parties) are now seeking summary judgment on the Law Office's claim against Gerber and Duval and summary judgment dismissing Gerber's and Duval's counterclaims.

### 1. Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924.

This case has a complicated factual history, including an underlying arbitration,[2] and this has resulted in a statement of material facts, an opposing statement of material

---

Thompson Law Office pursuant to M.R.Civ.P. 13(h). The court will therefore omit any further reference to third party claims and will refer only to Gerber's and Duval's counterclaims.

[2] A review of the motions in limine which the parties have filed and which are referred to in their summary judgment papers reveals that Gerber and Duval also brought a bar complaint against Attorney Thompson raising the same allegations that form the basis for their claims of legal malpractice. That complaint led to a hearing before a Grievance Panel, which found that no misconduct under the Rules of Professional Conduct had occurred, with one panel member dissenting. Decision in GCF-11-258, filed May 29, 2013.

2

facts, and a reply statement of material facts totaling 53 pages and 156 paragraphs. The court has attempted to carefully review those submissions and, where factual assertions have been disputed, has reviewed the underlying record citations.

Several deficiencies should be noted. Among the submissions by Gerber and Duval in opposition to the motion for summary judgment are an 11-page, 67-paragraph affidavit from Gerber and a 6-page, 35-paragraph affidavit from Duvall. The defendants' statement of material facts repeatedly cites to the Gerber and Duval affidavits without specifying a page or paragraph number.[3] This does not comply with M.R.Civ.P. 56(h)(4)'s requirement that record citations identify the specific page or paragraph of the material cited.

This is not a case where, despite noncompliance with Rule 56(h)(4), the court can nevertheless discern the basis for a party's factual assertions without difficulty. Compare North Star Capital Acquisition LLC v. Victor, 2009 ME 129 ¶ 5 n. 3, 984 A.2d 1278, 1280 n.3. A court cannot be expected to search through 17 pages and 102 paragraphs in order to determine whether there is factual support in each of the instances where Gerber and Duval have provided general citations to unspecified portions of their affidavits. Record citations to the Gerber and Duval affidavits have therefore been disregarded, and any factual assertions which have not been admitted and for which those affidavits are the only record support cited have been deemed unsupported. See M.R.Civ.P. 56(h)(4); HSBC Bank N.A. v. Gabay, 2011 ME 101 ¶ 9, 28 A.3d 1158; Levine v. R.B.K. Caly Corp., 2001 ME 77 ¶ 9, 770 A.2d 653.

---

[3] E.g., Defendants' Statement of Material Facts dated October 2, 2013 (Defendants' SMF) ¶¶ 58-62, 66-74, 77-78, 80-84, 92-93, 96-97, 99-100, 103-05, 107-10, 113-14, 116-20, 132, 143-54, 156. In many of those instances, a general citation to unspecified portions of the Gerber and Duval affidavits is the only record support cited by defendants. E.g., Defendants' SMF ¶¶ 66, 71, 81, 83, 96-97, 99-100, 103, 107, 113, 116-17, 146-48, 151-54.

There are also deficiencies in the summary judgment submissions of the Thompson parties. Some of the denials and qualifications in the Thompson parties' Reply Statement of Material Facts dated October 23, 2013 (Thompson Reply SMF) cite to incorrect paragraphs in the Thompson and/or Hansen affidavits.[4] If the court had to resolve this issue, the court might be prepared to overlook the errors where the correct paragraphs are easily discernable. North Star Capital Acquisition LLC v. Victor, 2009 ME 129 ¶ 5 n. 3. Otherwise, the court would disregard the record citation in question.

However, the court does not have to reach this issue. Because the deficiencies in question appear in the Reply SMF, they do not detract from the Thompson parties' motion to the extent that the Thompson parties are entitled to summary judgment based on the court's review of the Thompson parties' initial Statement of Material Facts dated September 5, 2013 (Thompson SMF) and of Defendants' opposing SMF. The court's decision on the instant summary judgment motion does not depend on any paragraphs in the Reply SMF where affidavits have been incorrectly cited.

### 2. Defendants' Breach of Contract and Legal Malpractice Claims

Defendants' counterclaims for breach of contract and legal malpractice are both based on the alleged failure of Thompson and Hansen to adequately represent Gerber and Duval at the mediation and subsequent arbitration of Gerber's and Duval's claims against DECH. See Defendants' Counterclaim and Third Party Complaint ¶¶ 1-42.

First, Gerber and Duval claim that Thompson and Hansen failed to adequately represent them at the mediation that occurred before Patrick Coughlan of Conflict Solutions on July 30, 2010. Specifically, they allege that they were not prepared for the

---

[4] E.g., Thompson Reply SMF ¶¶ 82, 86, 87, 108, 109, 118. In many of those cases the citation is off by one paragraph. E.g., Thompson Reply SMF ¶ 108 (citing Thompson Aff. ¶ 4 instead of ¶ 5), ¶ 109 (citing Thompson Aff. ¶ 5 instead of ¶ 6), ¶ 118 (citing Thompson Aff. ¶ 8 instead of ¶ 9).

4

mediation process and did not understand that they would be pressured to reach a decision at the mediation on settlement. They contend Thompson and Hansen failed to vigorously advocate for their interests and that Thompson and Hansen, along with the mediator, improperly pressured them to agree to the Term Sheet that was signed at the mediation. They allege that the terms of the settlement, including a provision that any disputes would be arbitrated before the mediator, were not adequately explained to them. They further contend that the Term Sheet did not adequately address their desire to obtain a reference letter from DECH. In all these respects they contend that Thompson and Hansen failed to comply the standard of conduct required of attorneys.

Second, Gerber and Duval claim that when – starting the day after the July 30, 2010 mediation – they began raising objections to the agreement reached at mediation on the ground that they had been "unduly pressured in a hostage situation,"[5] Thompson and Hansen violated their duty as attorneys by engaging in negotiations with counsel for DECH leading to agreement on modified terms that Gerber and Duval had not authorized and then by declining to represent Gerber and Duval in disputes that arose in connection with certain details of the settlement.

According to Gerber and Duval, Thompson and Hansen were "uniquely positioned" to represent them in the disputes that arose with respect to details of the settlement that were to be incorporated in a final settlement agreement, and Gerber and Duval argue that Thompson and Hansen's failures of representation and their subsequent withdrawal resulted in an arbitration before Patrick Coughlan in March

---

[5] See July 31, 2010 email from Gerber to Hansen included in Ex. 37 to Defendants' SMF. That first email complains about the settlement but is ambivalent as to the performance of the attorneys. On the one hand, it complains that Thompson and Hansen knew the mediation "scenario," that Gerber and Duval did not, and that Gerber and Duval had been unduly pressured and duped. On the other hand, the email states that Gerber and Duval appreciated Thompson and Hansen's hard work and "brilliant organization of the case" and also states, "Maybe you want to call this 'buyer's remorse.'"

5

2011 that imposed various new provisions adverse to Gerber's and Duval's interests that departed from the mediation Term Sheet and that had never been agreed to.

### 3. Alleged Malpractice Relating to July 30, 2010 Mediation

It is undisputed that the July 30, 2010 mediation resulted in a Term Sheet that was signed by the DECH parties and by Gerber and Duval. Exhibit 3 to Thompson SMF. The Term Sheet states that it "contains the essential terms of the settlement" between Gerber and Duval and the DECH parties, that it "will be binding on the parties," and that any disputes as to the terms of the settlement would be referred to Conflict Solutions for binding arbitration. Id. ¶¶ 1, 14-15.

Gerber and Duval argue that there are factual disputes between the parties with respect to Thompson and Hansen's alleged malpractice in connection with the July 30, 1010 mediation, specifically alleging that Thompson and Hansen improperly pressured Gerber and Duval to settle, that Thompson and Hansen failed to advocate for their clients' interests with respect to a DECH reference letter, and that Thompson and Hansen failed to explain the provisions and ramifications of the Term Sheet.

Notwithstanding those disputes, there are two reasons why the court concludes that the Thompson parties are entitled to summary judgment with respect to Gerber and Duval's claims of breach of contract and malpractice based on the July 30, 2010 mediation. The first is based on collateral estoppel. The second is because Gerber and Duval have not offered any evidence that they would have obtained a more favorable result at mediation but for the alleged failures of Thompson and Hansen.

Collateral estoppel applies because the essential factual issues which Gerber and Duval are raising in connection with the July 30, 2010 mediation have already been resolved against Gerber and Duval in the subsequent arbitration. After Gerber and

6

Duval raised objections to the Term Sheet and to the final settlement agreement that the DECH parties proposed,[6] it is undisputed that Gerber and Duval, represented by new counsel,[7] agreed to proceed to arbitration before Patrick Coughlan on those issues. Thompson SMF ¶ 45, citing Thompson SMF Ex. 90. In the brief they submitted before the arbitration hearing Gerber and Duval expressly argued that the status of the dispute could not be resolved

> without a clear understanding of the level of distrust and communication breakdown that has occurred not only between the parties, but also between the Plaintiffs and the attorneys who represented them at the mediation.

See Thompson SMF Exhibit 9 at 1 (emphasis added), cited in Thompson SMF ¶ 51.

In their arbitration brief Gerber and Duval specifically argued that that they had been told by their attorneys that mediation would just be a fact finding exercise but that at the mediation itself they were put under "immense pressure by their own attorneys to settle" and that while they had "reluctantly agreed to many of the settlement terms, others were never disclosed to them or explained." They further argued that the Term Sheet was prepared without their input and that

> with the pressure of time and without explanation, they were asked to sign the Term Sheet, which included an arbitration clause, the ramifications of which they never fully understood until later.

Id. at 2.

---

[6] Although the Term Sheet signed by Gerber and Duval stated that it contained the essential terms of settlement and was binding on the parties (¶ 14), it also contemplated the subsequent preparation of a final Settlement Agreement and Mutual Release. See ¶¶ 9, 16.

[7] Attorney A.J. Greif appeared for Gerber and Thompson in late September 2010, and Thompson and Hansen thereafter filed an unopposed motion to withdraw in early October. Attorney Greif subsequently withdrew in January 2011, and was replaced by Attorney Michelle Allott, who represented Gerber and Duval at the arbitration before Patrick Coughlan in March 2011. See Ex. 91 to Thompson SMF (docket sheet).

7

In the decision issued after the March 9, 2011 arbitration, however, Arbitrator Coughlan specifically rejected those arguments, finding, inter alia:

> Counsel for all parties cooperated in the drafting of the Term Sheet, and all parties had ample opportunity to revise the Term Sheet before it was signed. At the mediation, counsel for all sides aggressively championed their clients' positions, and clients fully participated in discussions concerning the ramifications of the terms of the Term Sheet and final settlement.

Exhibit 5 to Thompson SMF at 2, cited in Thompson SMF ¶ 52 (admitted).[8]

The Law Court has ruled that arbitration decisions are entitled to collateral estoppel effect when parties later attempt to relitigate the identical issues heard and decided by the arbitrator. Beal v. Allstate Insurance Co., 2010 ME 20 ¶¶ 14-16, 989 A.2d 733. In this case Gerber and Duval argued before the arbitrator that they had been improperly pressured and that they had not understood the terms and ramifications of the term sheet. The arbitrator rejected certain of those claims explicitly and others implicitly. See Gray v. TD Bank N.A., 2012 ME 83 ¶ 14, 45 A.3d 735 (implicit as well as explicit findings necessarily made in prior proceeding are entitled to collateral estoppel effect). The arbitrator's findings are therefore entitled to collateral estoppel effect in this case.

Gerber and Duval do not argue that the arbitration lacked the essential elements of adjudicatory procedure necessary for collateral estoppel to apply. See Beal v. Allstate Insurance Co., 2010 ME 20 ¶ 13. Instead, they argue that collateral estoppel does not apply because the arbitrator was not presented with their claim of legal malpractice and did not rule on that issue. The problem with this argument is that the factual predicates

---

[8] In addition, Gerber and Duval do not dispute that at the outset of the mediation, the mediator explained – and Gerber and Duval understood – that the mediation was a non-binding process and that it was up to Gerber and Duval to decide whether or not to settle the case. Thompson SMF ¶ 7 (admitted).

8

for Gerber and Duval's claims that Thompson and Hansen committed malpractice by improperly pressuring them to sign the Term Sheet and by failing to explain the terms and ramifications of the Term Sheet were decided against them in the arbitration. They cannot now relitigate those issues.

The second problem with Gerber and Duval's claims of malpractice based on the July 30, 2010 mediation is that they have not offered evidence demonstrating the existence of a factual dispute for trial on whether they would have received a more favorable outcome at the mediation absent the alleged failings of Thompson and Hansen. In this connection it bears emphasis that Gerber and Duval are not arguing that in the absence of Thompson and Hansen's alleged malpractice, they would not have settled but would instead have gone to trial and would have received a more favorable result after trial. Gerber and Duval have offered no argument, evidence, or expert opinion to that effect. Gerber and Duval are instead arguing that, but for Thompson and Hansen's malpractice, they would have obtained more favorable settlement terms and would have been relieved of certain settlement provisions that they find onerous and objectionable.

A plaintiff in a legal malpractice action must demonstrate that he or she would have received a more favorable result but for the defendant's malpractice. Niehoff v. Shankman & Assoc. Legal Center P.A., 2000 ME 214 ¶ 9, 763 A.2d 121. The same rule applies when the action sounds in contract. Id. ¶ 8. In this case any argument that Gerber and Duval would have been likely to have obtained more favorable settlement terms at the mediation if Thompson and Hansen had not engaged in malpractice faces the immediate obstacle that more favorable terms could only have been obtained if the DECH parties had made further concessions. There has been no evidence offered to support the possibility of such concessions.

9

Gerber and Duval argue that Thompson and Hansen committed malpractice by allowing Gerber and Duval to agree at the mediation that any future disputes concerning the terms of the settlement would be referred for binding arbitration before Patrick Coughlan. See Term Sheet signed by Gerber and Duval (Thompson SMF Ex. 3) ¶ 15. However, arbitration before a mediator who is familiar with the terms of the settlement and the discussions which led to that settlement is a fairly standard provision, and Gerber and Duval have not cited to any expert opinion that it was malpractice for Thompson and Hansen not to have objected to binding arbitration before the mediator. Nor have Gerber and Duval offered any expert opinion or other evidence that another arbitrator would have given them a more favorable decision.

While Gerber and Duval's papers now suggest in passing that Coughlan was biased against them, see Defendants' SMF ¶¶ 137, 141, a review of the record materials they cite contain no support for any claims of bias. Moreover, if their current suggestions of bias are based on rulings in the subsequent arbitration decision (to the extent that Coughlan apparently did not find Gerber's testimony at the arbitration hearing to be credible in certain respects), they have offered no evidence that any supposed bias by Coughlan was or should have been evident to Thompson and Hansen at the time of the mediation.[9]

### 4. Alleged Post-Mediation Malpractice

Gerber and Duval's claim that Thompson and Hansen engaged in further malpractice after the July 30, 2010 mediation is based on two arguments. First, they argue that Thompson and Hansen, when requested to engage in further negotiations

[9] No objection based on bias was raised by subsequent counsel for Gerber and Duval in advance of the arbitration hearing. See Thompson SMF Ex. 90; Thompson SMF Ex. 9.

10

with DECH counsel over the wording of the reference letter and certain other issues, reached agreements with opposing counsel without consulting their clients. Second, they argue that Thompson and Hansen refused to represent them at the arbitration hearing on issues relating to alleged variances between what had been agreed to at the July 30, 2010 mediation and the final settlement document that was contemplated as part of the settlement. On both issues Gerber and Duval have offered only conclusory assertions that they would have obtained a more favorable settlement in the absence of the alleged malpractice by Thompson and Hansen, and such assertions are insufficient to raise a disputed issue for trial.

With respect to the claims that Thompson and Hansen reached unauthorized agreements with counsel for DECH while negotiating changes to the reference letter language after the mediation, Gerber and Duval repeatedly emphasize that, in the subsequent arbitration proceedings, counsel for DECH attempted to rely on Thompson and Hansen's alleged assent.[10] The record certainly indicates that the counsel for DECH complained at some length as to counsel's belief that an agreement had been reached with Thompson and Hansen. However, counsel for DECH ultimately stated that for purposes of arbitration, the DECH defendants "are willing to accept [Gerber and Duval's] assertion that an agreement was not reached" and that the arbitrator therefore needed to decide the issues in dispute. DECH Arbitration Brief (Exhibit 126 to Defendants' SMF) at 8.

Moreover, nothing in the Arbitrator's ultimate decision suggests that the arbitrator relied in any way on Thompson and Hansen's supposed agreement to terms not authorized by their clients. See Arbitration Order of March 18, 2011 (Thompson

[10] There is a factual dispute whether Thompson and Hansen had represented that they were authorized to reach agreements or whether any agreements they discussed with DECH counsel were tentative and subject to client approval.

11

SMF Ex. 5). As a result, there is no evidence (and nothing more than speculation) that Gerber and Duval would have received a more favorable result at arbitration but for any unauthorized negotiations between Thompson and Hansen and counsel for DECH.

Gerber and Duval's other major argument is based on the circumstances of Thompson and Hansen's withdrawal from the case. There is evidence that, after Gerber and Duval began objecting that they had been pressured into signing the Term Sheet and began seeking what Thompson and Hansen believed were changes from the agreements reached at mediation, Thompson and Hansen advised Gerber and Duval that they could not provide continued representation as to those issues.[11] Thompson and Hansen stated that it was their understanding that Gerber and Duval wished to argue that the Term Sheet was not an enforceable agreement and that Thompson and Hansen could not take that position because they did not believe that to be the case. Thompson SMF Ex. 32 (email of August 26, 2010).

Thereafter, when Gerber outlined all his objections to the settlement, including an objection that the $700,000 monetary settlement that had previously been agreed to was inadequate,[12] Thompson and Hansen advised Gerber and Duval that they could not continue to represent them in contesting issues that they thought had been resolved at the mediation. Thompson SMF Ex. 42 (email of September 21, 2010). After Attorney Greif entered his appearance for Gerber and Duval, Gerber and Duval terminated their attorney-client relationship with Thompson and Hansen, who filed an unopposed

---

[11] Gerber testified at the Grievance Committee hearing that Thompson had first suggested that if Gerber had doubts about the advice he was receiving from Thompson, Gerber should get a second opinion. Grievance Hearing Tr. (Thompson SMF Ex. 124) at 128-29.

[12] See Thompson SMF Ex. 41 (letter dated September 17, 2010), referred to in Thompson SMF ¶ 37. Although Defendants' SMF denies Thompson SMF ¶ 37, Gerber and Duval do not deny that Gerber wrote the document in question.

motion to withdraw. Thompson SMF ¶ 44; Grievance Hearing Tr. 173; Thompson SMF Ex. 91 (docket sheet).

The record reflects considerable disagreement between the lawyers and their clients as to which issues had been resolved at mediation and which issues represented new terms that had not been agreed to. As discussed below, the arbitration decision ultimately rejected Gerber and Duval's contentions that the DECH parties were proposing new terms or terms that were inconsistent with the agreement reached at mediation.

Even if this were not true, however, Gerber and Duval have not demonstrated that there are any disputed issues of fact for trial on a necessary element of their legal malpractice claims – that they would have received a more favorable result after the June 30, 2010 mediation if Thompson and Hansen had remained in the case and had not "abandoned" them. A review of Gerber and Duval's statement of material facts demonstrates that the only evidentiary support offered for the claim that Gerber and Duval would have obtained a more favorable result but for the withdrawal of the Thompson Law Office is the following:

(1) a citation to the Gerber and Duval affidavits for the assertion that if Thompson and Hansen had continued to advocate for their clients, they would have avoided an additional new term hindering Gerber and Duval from seeking reinstatement of their medical privileges. See Defendants' SMF ¶ 107. For the reasons discussed above, a general citation to unspecified portions of the Gerber and Duval affidavits does not comply with Rule 56(h)(4). Moreover, this is an issue that would require expert testimony. See Corey v. Norman Hanson & DeTroy, 1999 ME 196 ¶ 13, 742 A.2d 933.

13

(2) Defendants' SMF ¶ 111, citing to the deposition of plaintiff's expert, Attorney John Campbell, for the proposition that Thompson and Hansen were "uniquely positioned" to assist Gerber and Duval and that they alone could have convinced the arbitrator that DECH was attempting to add new terms. A review of the deposition testimony cited, however, shows that while Campbell gave the opinion that Thompson and Hansen were uniquely equipped to help their clients because they knew the history of the case, his cited testimony does not contain any opinion that Thompson and Hansen would have been able to convince the arbitrator to rule more favorably to Gerber and Duval.

(3) Other assertions to the same effect that cite to Campbell's testimony, to Campbell's expert designation, and to the affidavits of Gerber and Duval generally. See Defendants' SMF ¶¶ 136-37, 141. Once again, the cited portions of Campbell's testimony recount his criticisms of Thompson and Hansen but do not include an opinion that Gerber and Duval would have obtained a more favorable result but for their attorneys' failings. Moreover, an expert designation is not admissible evidence on summary judgment and is not made admissible simply because the expert identifies it as his designation at his deposition.[13]

(4) a general assertion that Attorney Campbell "will testify" that the attorneys' breach of the standard of care proximately caused harm to Gerber and Duval. Defendants' SMF ¶ 139. A prediction as to future testimony is insufficient to

_____

[13] In addition, a general citation to a 17-page expert designation does not satisfy Rule 56(h)(4). Even if this were not the case and if Gerber and Duval had offered sworn testimony from Campbell consistent with his designation, Campbell's designation nowhere offers an expert opinion that Gerber and Duval would have obtained a more favorable result but for the malpractice of Thompson and Hansen. At most it suggests that Thompson and Hansen "would have had the best opportunity to try to salvage the settlement." Expert Designation (Ex. 97 to Defendants' SMF) at 17 (emphasis added). This falls well short of evidence that it is more likely than not that a more favorable result would have been achieved.

14

demonstrate the existence of disputed facts for trial. Moreover, neither a citation to a 120-page portion of Campbell's deposition nor a general citation to the Gerber and Duval affidavits complies with Rule 56(h)(4), and citations to expert designations do not constitute admissible evidence on summary judgment.

(5) Various assertions by Gerber and Duval that they were harmed by the outcome of the mediation and arbitration. E.g., Defendants' SMF ¶¶ 116-17. However, Gerber and Duval are not entitled to recover for any alleged harm unless they prevail on their counterclaims, and they cannot prevail on their counterclaims in the absence of expert testimony that Gerber and Duval would have been likely to have obtained more favorable settlement terms but for the alleged malpractice. In addition, many of Gerber's and Duval's assertions of harm are based only on general citations to unspecified portions of the Gerber and Duval affidavits in violation of Rule 56(h)(4).

It bears emphasis that as a general matter, the assertion that Thompson and Hansen were "uniquely positioned" to pursue Gerber and Duval's arguments after the July 30, 2010 mediation is conclusory at best. Such an assertion would only have traction if there were evidence showing how Thompson and Hansen would likely have been able to succeed where successor counsel failed.

The summary judgment record demonstrates that successor counsel vigorously argued at the arbitration that the DECH parties were attempting to impose new terms on Gerber and Duval that had never been agreed to and that were inconsistent with the agreement reached at mediation. See Thompson SMF Ex. 9 at 3-16. No evidence has been presented demonstrating the existence of a factual dispute for trial as to how Thompson and Hansen could have argued those issues more forcefully or more effectively. Indeed, since Thompson and Hansen disagreed that some of the terms challenged by Gerber and Duval were new or inconsistent, successor counsel was

15

actually less constrained in arguing those issues than Thompson and Hansen would have been.

Ultimately, the arbitrator rejected Gerber and Duval's contentions almost entirely and concluded that the terms to which Gerber and Duval were objecting either had been agreed to at the mediation or were fully consistent with the settlement that had been reached. On two issues the arbitrator specifically found that the post-mediation objections raised by Gerber and Duval involved issues that had been resolved at the mediation. As to those issues the arbitrator's decision is entitled to collateral estoppel effect for the reasons previously stated.

Thus Gerber and Duval argued at the arbitration (and continue to argue before this court) that they were exposed to an unfair, one-sided liquidated damages provision for any violations of the confidentiality provisions of the settlement. That provision is expressly contained in the Term Sheet at paragraph 13, and the Arbitrator found that it had been "specifically negotiated as part of the settlement and all parties discussed it." March 18, 2011 Arbitration Order at 2.[14]

Similarly, while Gerber and Duval complain that a provision that they not reapply for employment at DECH was not discussed or agreed to at mediation and departed from the Term Sheet, the arbitrator disagreed, noting that all parties had extensively discussed the need to permanently end the relationship between the parties and that the agreement of the DECH parties to pay $700,000 had been predicated on a settlement that would bring all past and future litigation to an end. March 18, 2011 Arbitration Order at 2. The arbitration decision further found that the importance of the parties not working together was "clearly discussed and contemplated" and that the

---

[14] In this connection the arbitration order noted that the DECH parties were also bound by the confidentiality provision and were subject to damages without any cap. Id.

16

failure to expressly include a provision in the Term Sheet preventing Gerber and Duval from reapplying for employment was a "scrivener's error." Id. at 3.

There were several issues that had not been specifically addressed at the mediation, including Gerber and Duval's right to reapply for DECH hospital privileges. On that issue the arbitrator again referred to the intent of all parties to put the dispute behind them and avoid future litigation. See March 18, 2011 Arbitration Order at 2 (citing Gerber's statement that the goal of the settlement was to get the dispute over with and let plaintiffs "get on with their lives"). In order to protect Gerber and Duval's interest in obtaining future employment while eliminating the prospect of future litigation between the parties, the arbitrator concluded that Gerber and Duval should be able to reapply for DECH hospital privileges and could truthfully state to other employers that their medical privileges had not been denied. However, he ruled they could not sue DECH if they in fact applied and were turned down. Id. at 3-4.

The arbitrator also found that the Term Sheet contained specific language for the reference letter to be provided to Gerber and Duval but did not include language for the hospital to use when a potential employer or a regulatory body made an inquiry. Arbitration Order at 3.[15] After the mediation Gerber and Duval had requested additional language, and the arbitrator concluded that inquiries by employers and regulators should be answered as follows:

---

[15] The specific language agreed to in the Term Sheet for the reference letter was the following:

> Dr. Gerber and Danielle Duval were not terminated due to any deficiencies regarding patient care. Nor were they terminated for disciplinary reasons, professional concerns, or as a result of any ethical or moral concerns.

Term Sheet ¶ 4.

17

> Dr. Lowell Gerber and Ms. Danielle Duval were known at DECH for their personalized patient care and their excellent clinical skills. Down East Community Hospital has no ethical or moral concerns with Dr. Gerber and Ms. Duval. Neither Dr. Gerber or Ms. Duval were the subject of any disciplinary action by Down East Community Hospital.

Id. at 4.[16]

This language had been advocated by Gerber and Duval and was acceptable to them, but they objected to the arbitrator's further ruling that this additional language was to be restricted to employer or regulatory inquiries and was not to be made public. See Gerber and Duval Arbitration Brief at 6-7 (Thompson SMF Ex. 9). The arbitrator's ruling on this issue appears to have been designed to prevent the dispute between the parties from being re-ignited by public comments. As the arbitration order noted, Dr. Gerber had recently sent a letter to various public officials about the settlement, and the arbitrator therefore ordered that Gerber and Duval "shall not use the letter [with the additional language] against the hospital." Id.

The decisions by the arbitrator with respect to reference letter language and hospital privileges may or may not have been correct but those decisions were, in the arbitrator's view, appropriate to effectuate the settlement. As set forth above, Gerber and Duval have not demonstrated that there is a disputed issue for trial on whether they could have obtained a more favorable outcome on those issues and on any of the other issues they have raised relating to alleged malpractice of the Thompson Law Office after the June 30, 2010 mediation.

---

[16] The arbitrator agreed with Gerber and Duval in ruling that DECH shall handle all inquiries about Gerber and Duval "in the same manner as all other past employees who left DECH in good standing" and that the hospital's reference letter should also make clear that the hospital's termination of Gerber and Duval was without cause. Id.

18

## 5. The Law Office's Claims under the Contingent Fee Agreement

For the foregoing reasons, the Thompson parties are entitled to summary judgment dismissing Gerber and Duval's affirmative claims for breach of contract and legal malpractice against them. A different result obtains, however, with respect to the Thompson Law Office's claims against Gerber and Duval based on the contingency fee agreements that both Gerber and Duval had entered into.[17]

As relevant to the situation presented in this case, the Contingent Fee Agreements, Thompson SMF Ex. 1 & 2, provide, inter alia:

- that Gerber and Duval agree to retain the Thompson Law Office to perform legal service in connection with their claim against DECH and that the Law Office agrees to perform such services "faithfully and with due diligence;"

- that the Law Office will receive compensation equaling 40 percent of the gross amount collected in a judgment or settlement, before deduction of any expenses (¶ 5); and

- that the Law Office shall have the right to withdraw in the event the clients fail to cooperate with the Law Office (¶ 12).

Specific provisions applicable in the event of a settlement and attorney withdrawal are as follows:

> 13. In the event that; a) Client discharges Attorney at any time; b) Attorney exercises his right to withdraw because Client misrepresented or failed to disclose material facts to Attorney; or c) Attorney exercises his right to withdraw because Client failed to cooperate with Attorney in the prosecution of the case; Client shall immediately be liable to Attorney for either four-tenths (40 percent) of the last settlement offer received by Attorney or a fee in an

---

[17] The complaint filed by the Thompson Law Office includes two counts: (1) a count seeking a declaratory judgment that the Law Office is entitled to the fee specified in the contingent fee agreement, an amount which has been placed in escrow pending resolution of this action, and (2) a claim for breach of the contingent fee agreement.

19

amount equal to the number of hours devoted to the case by Attorney multiplied by the Attorney's customary hourly rate, whichever is greater, plus 15 %. . . .

14. In the event that Attorney receives settlement offer for Client which Client rejects, and Attorney subsequently withdraws as counsel, Client shall pay Attorney an amount equal to four-tenths (40 percent) of said settlement offer in the event that Client subsequently settles or obtains a judgment. . . .

The Law Office appears to contend that this case is governed by paragraph 14, because Gerber and Duval agreed to the Term Sheet but rejected the later Settlement Agreement and eventually received a monetary settlement on which, according to the Law Office, a 40 percent fee is owed. It may be more accurate to characterize this case as one where Gerber and Duval agreed to an overall settlement but later disagreed with certain of the details of the settlement. In either event, however, it can be argued that the Law Office is entitled to 40 percent of the $ 700,000 settlement amount under the terms of the Contingent Fee Agreements. See ¶¶ 2, 5, 13.[18]

Gerber and Duval, however, argue that the Law Office should not be entitled to the 40 percent fee requested because the Law Office violated its professional obligations to its clients. In particular, Gerber and Duval argue that the Law Office did not achieve success with respect to the non-monetary relief sought by Gerber and Duval, that Thompson and Hansen sacrificed that non-monetary relief in order to collect their fee on the $ 700,000, and that Thompson and Hansen wrongfully declined to represent their clients' interest with respect to the disputes that arose after the June 30, 2011 mediation. Gerber and Duval also argue that the Contingent Fee Agreements violate Rule 1.5(a) of

[18] Gerber and Duval argue that the Contingent Fee Agreements are ambiguous. They do not, however, identify any specific provisions which they claim to be ambiguous. Moreover, while ambiguity, if it existed, would allow the admission of extrinsic evidence as to interpretation of contractual terms, neither party in this case has offered any evidence that goes to interpretation. The court will therefore apply standard contract principles in interpreting the Contingent Fee Agreements.

20

the Maine Rules of Professional Conduct, which provides that a lawyer "shall not make an agreement for, charge, or collect an <u>unreasonable</u> fee . . . ." (emphasis added).

The basis for summary judgment against Gerber and Duval on their affirmative claims against the Thompson parties is that many of the factual predicates of those claims are barred by collateral estoppel and that all of those claims fail because Gerber and Duval have not demonstrated the existence of a factual dispute for trial on whether they might have obtained a more favorable outcome but for the alleged malpractice. Regardless of their inability to demonstrate that they might have obtained a more favorable settlement, however, Gerber and Duval have demonstrated that factual disputes exist as to whether the Law Office performed "faithfully and with due diligence" as required by the second sentence of the Contingent Fee Agreements.

If the Law Office breached its obligations under the Contingent Fee Agreements and if that breach was material, that could as a matter of contract law excuse Gerber and Duval from their obligation to pay the contingency fee. It is essentially undisputed that Gerber and Duval discharged Thompson and Hansen as a result of the differences that arose between attorneys and clients after the July 30, 2010 mediation. Thompson SMF ¶ 44; Defendants' SMF ¶ 44. However, the court does not interpret paragraph 13 of the Contingent Fee Agreements (which addresses the eventuality where the client discharges the attorney) to provide that a 40 percent contingent fee would still be applicable if the attorneys were discharged for significant violations of their professional obligations.

Moreover, while collateral estoppel precludes relitigation of issues decided by the arbitrator, not all of Gerber and Duval's complaints against the Law Office are barred by collateral estoppel. Thus there is a factual dispute whether Gerber and Duval had a legitimate reason to discharge the Law Office if, after the July 30, 2010 mediation,

21

Thompson and Hansen negotiated with DECH counsel without authorization. A factual dispute also exists as to whether Thompson and Hansen wrongfully declined to represent Gerber and Duval with respect to the certain of the disputes that arose in connection with the final settlement agreement. The arbitrator did not rule on either of those issues.

The court is not convinced that there should be a trial as to whether – even in light of Gerber and Duval's considerable dissatisfaction with the non-monetary relief they ultimately obtained – a 40 percent fee based on the monetary relief obtained alone was "unreasonable" within the meaning of Maine Rule of Professional Conduct 1.5(a). The Contingent Fee Agreements do not specify that the lawyers' entitlement to a contingent fee is predicated on overall success as to both monetary and non-monetary relief. However, if the lawyers did not faithfully represent Gerber and Duval with respect to non-monetary relief, that might constitute a breach that would affect the Law Office's entitlement to a contingent fee.

In sum, although Gerber and Duval remain barred by collateral estoppel from relitigating issues decided by the arbitrator, they have demonstrated the existence of disputed factual issues as to which collateral estoppel does not apply and which require a trial on the Law Office's claim for the contingent fee.

The entry shall be:

The motion for summary judgment by the plaintiff Law Offices of Peter Thompson & Associates and by third party defendants Peter Thompson and Chad Hansen is granted as to the counterclaims and third party claims of defendants Lowell Gerber and Danielle Duval, and the counterclaims and third party claims are dismissed.

The Thompson Law Office's motion for summary judgment on its claims against defendants based on the contingent fee agreement is denied.

22

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).


Dated: February __11__, 2014


Thomas D. Warren
Justice, Superior Court

OF COURTS
rland County
y Street, Ground Floor
d, MF ^4101

THOMAS MARJERISON ESQ
NORMAN HANSON & DETROY LLC
PO BOX 4600
PORTLAND, ME 04112-4600

OF COURTS
rland    ʼnty
y Streeᵗ, Ground Floor
d, ME 04101

MICHELLE ALLOTT, ESQ
FARRIS LAW
491 US ROUTE ONE SUITE 22
FREEPORT, ME 04032

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-418
TJW - CUM- 5/7/2012

LAW OFFICES OF PETER THOMPSON
& ASSOCIATES P.A.,

    Plaintiff

v.

ORDER

LOWELL GERBER, et al

    Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 01 2012

RECEIVED

The parties have submitted letters enumerating a number of discovery disputes and have raised certain privilege issues. To the extent that either plaintiffs or defendants wish to supplement the letters previously filed with transcripts, discovery materials, and legal authorities, they shall do so by August 17, 2012.

In the meantime, counsel shall confer on any discovery issues as to which no Rule 26(g) conference has been held[1] and counsel for plaintiff shall advise the clerk whether plaintiff objects to the proposed amended scheduling order submitted by counsel for defendants with her July 26, 2012 letter.

A Rule 26(g) discovery hearing shall thereafter be scheduled.

The entry shall be:

    Discovery order entered. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

---

[1] Fir instance, the court cannot discern whether the parties have conferred with respect to plaintiff's objections to defendants' Rule 30(b)(6) deposition notice and Rule 30(b)(5) request for production.

Dated: August __7__, 2012

Thomas D. Warren
Justice, Superior Court

2

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-418

✓

LAW OFFICES OF PETER THOMPSON
& ASSOCIATES P.A.,

Plaintiff

v.

ORDER

LOWELL GERBER, et al

Defendants

STATE OF MAINE
Cumberland, ss., Clerk's Office

AUG 07 2012

RECEIVED

The court has reviewed the submissions of non-parties Wayne Dodwell and Down East Community Hospital in response to its July 5, 2012 order to show cause. It has also reviewed the authorities cited by Down East Community Hospital to the extent that those authorities are available to the court.[1]

None of the authorities that the court has reviewed speak to the circumstances of this case – where a plaintiff law firm which is not subject to any confidentiality agreement (although in possession of the information contended to be confidential) seeks to collect fees from defendants who are subject to confidentiality provisions contained in a settlement agreement with non-parties but who allege that no fees are owed and that the law firm committed malpractice in connection with the (contractually confidential) terms of the settlement agreement.

The cited case which may be closest on its facts to the instant case is Young v. State Farm Mutual Automobile Insurance Co., 169 F.R.D. 72 (S.D.W.Va. 1996), in which

---

[1] Two of the decisions cited are apparently only available on Westlaw, which is not available to the court. In re KLA-Tencor Corp. Shareholder derivative Action, 2009 WL 37827, * 1 (N.D. Cal. Jan. 6, 2009); Saunders v. ChampSports Inc., 2008 WL 5142393, * 1 (S.D.W.Va. Dec. 8, 2008).

a law firm sought to collect fees it claimed were owed based on a confidential settlement. The court in Young was faced with a threshold question of whether the defendants could resist discovery as to the settlement amount because of the contractual confidentiality provision. The court concluded that notwithstanding the confidentiality provision, the information sought was discoverable. Although it granted the requested discovery subject to a protective order, the opinion leaves very little doubt that the settlement amount would also be admissible at trial.

The court in Young did not have to reach the issue presented here – whether the contractual confidentiality provision would require the court to seal its file and hold any trial in a closed courtroom. Under circumstances of this case, the principle that court proceedings and records are public cannot be reconciled with the non-parties' request that crucial terms of the settlement agreement continue to receive confidential treatment.

As far as the court can tell, absent some kind of star chamber proceeding closed to the public, it would be impossible for the parties to litigate this case without disclosing the information claimed to be confidential. By way of example, if the plaintiff law firm offers evidence at trial of its contingent fee agreement and the amount received by defendants in the settlement – evidence required to justify a damage award if the law firm were to prevail at trial – this will necessarily result in disclosure of information that is confidential under the settlement agreement.

The principle that court proceedings are open to the public is a fundamental tenet of our judicial system. See, e.g., Publicker Industries Inc. v. Cohen, 733 F.2d 1059 (3d Cir. 1984). The court is unwilling to engage in the kind of star chamber proceeding

2

that would be necessary to allow the parties to litigate the merits while maintaining the confidentiality sought by the non-parties.[2]

In addition, the non-parties have fallen far short of demonstrating a sufficiently compelling interest in confidentiality. Counsel for Dodwell asserts only that it is "highly unlikely" that he would have settled absent a confidentiality provision. Down East Community Hospital has submitted an affidavit from its CEO similarly indicating that the hospital would not have settled without a confidentiality provision and expressing concern that the disclosure of certain terms of the settlement "could send the wrong message to the public, . . . reflect negatively on [the hospital], . . . open up old wounds, . . . could be disruptive to the [hospital] community and/or derail the significant progress [the hospital] has made." These are speculative concerns that do not constitute the kind of "clearly defined and serious injury" or "overriding interest" that could possibly justify keeping court proceedings confidential. See Publicker Industries, 733 F.2d at 1071, 1073.[3]

The court understands that confidentiality provisions are often necessary for settlement, and to the extent possible it would enforce such provisions if it could do so without the necessity of (1) sealing any dispositive motions that are filed, (2) closing the

---

[2] This is equally true with respect to issues to be decided by the court (e.g., on a dispositive motion or at a bench trial) and with respect to issues to be decided by a jury if any party here exercises its right to a jury trial. Moreover, imposing confidentiality in the event of a jury trial would raise an additional set of issues – do the non-parties expect that the court, in addition to closing the courtroom, will impose a gag order on jurors?

[3] In dicta, the Publicker court indicated that a binding contractual obligation might in some circumstances justify confidential treatment. 733 F.2d at 1073-74. However, it limited that situation to information which was "innocuous but newsworthy," and nowhere suggested that contractual confidentiality provisions would justify a procedure where the courtroom would be closed during the presentation of all evidence on the merits followed by the issuance of a secret decision.

3

courtroom during any litigation of the merits, and (3) issuing a secret decision at the conclusion of the case.

As the court has previously stated, however, this does not mean that the entire record will be unsealed at this time. Counsel for Down East has informed the court that it is only seeking confidential treatment with respect to certain specified terms in the Term Sheet and Settlement Agreement and with respect to certain pleadings that have been filed. None of the parties have filed dispositive motions, the case has not been reached for trial, and defendants are currently seeking an extension of the discovery deadline.[4] As far as the court can tell, moreover, this case has not yet gone to mediation, and it may never be necessary to litigate the merits. In the interim, therefore, confidential treatment can be maintained to a limited extent.

Accordingly, the court orders as follows:

1. The court file is unsealed effective immediately except as specified below.

2. Paragraphs 3 and 4 of the Term Sheet and Paragraphs 5(A), 5(D), 8 and 12 of the Settlement Agreement shall remain under seal pending further order of the court. Within 14 days of the date of this order, counsel for Down East Community Hospital and/or counsel for Dodwell and/or counsel for defendants shall submit copies of the Term Sheet and the Settlement Agreement with those paragraphs redacted so that redacted copies may be placed in the open court file and unredacted copies maintained under seal.

3. Any specific portions of plaintiff's complaint, defendants' answer and counterclaims, and plaintiff's reply to counterclaims that disclose information as to the specified paragraphs of the Term Sheet and Settlement shall remain under seal pending

---

[4] It is not clear whether plaintiff objects to this request. Indeed, given the additional discovery sought by plaintiff, it appears likely that plaintiff may agree to the extension requested.

4

further order of the court. Within 14 days of the date of this order, counsel for Down East Community Hospital and/or counsel for Dodwell and/or counsel for defendants shall submit redacted copies of those pleadings[5] so that the redacted copies may be placed in the open court file and unredacted copies maintained under seal.

4. If redacted copies are not received by the court within 14 days as specified above in paragraphs 2 and 3, the court will unseal all of the documents and pleadings for which redacted copies have not been submitted.

5. For the reasons set forth above, if any dispositive motions are filed or if the case goes to trial, the court will unseal Paragraphs 3 and 4 of the Term Sheet and Paragraphs 5(A), 5(D), 8 and 12 of the Settlement Agreement to the extent that it is necessary to do so to allow the merits of the case to be litigated consistent with the right of public access to court proceedings.

6. Any documents or other evidence obtained by the parties during the course of discovery shall be the subject of a protective order providing that the parties and their attorneys shall not disclose information obtained in discovery relating to the terms of the settlement except as necessary to prepare the case for trial, to participate in mediation, and to litigate the case at trial.

The entry shall be:

With the exceptions specified above, the court file shall be unsealed effective immediately. Procedural order entered as to the continued confidentiality of certain specified information. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

---

[5] Any redactions made shall only include the specific words (or at most paragraphs) as to which confidential treatment is sought. If overly broad redactions are submitted, the court will unseal the relevant pleadings in their entirety.

5

----------------------------------------------------------------------------

01 0000007015          ALLOTT, MICHELLE
     251 WATER STREET PO BOX 120 GARDINER ME 04345-0120

| | | | | |
|---|---|---|---|---|
| F | LOWELL GERBER | DEF | RTND | 10/14/2011 |
| F | DANIELLE DUVAL | DEF | RTND | 10/14/2011 |

02 0000007836          MARJERISON, THOMAS
     415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

| | | | | |
|---|---|---|---|---|
| F | PETER THOMPSON, ESQ | 3RD P DEF | RTND | 11/03/2011 |
| F | LAW OFFICES OF PETER THOMPSON AND ASSOCI | PL | RTND | 09/19/2011 |